In re John BELL, Debtor.

Shawn (Bell) TSANOS, Plaintiff,

v.

John BELL, Defendant.

Bankruptcy No. 183–31299–20.
Adv. No. 183–0390–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

March 12, 1985.

Lester, Schwab, Katz & Dwyer, New York City (Patrick A. Lyons, New York City, of counsel), for debtor.

Richard Holohan, Yonkers, N.Y., for Shawn Tsanos.

DECISION

ROBERT JOHN HALL, Bankruptcy Judge.

John Bell ("debtor/defendant") and Shawn Tsanos ("plaintiff") were married on May 6, 1978 and divorced October 22, 1981. There were no children born to this marriage. Both parties were gainfully employed throughout the marriage, in occupations with rewarding futures. They assumed financial obligations jointly. In July

of 1980 the parties signed as joint tenants a three year lease for an apartment at 66–25 103 Street, Forest Hills, New York, with a monthly rental of $476.34.

On August 15, 1981 the debtor informed the plaintiff that he wanted a separation. A few days later the debtor moved out of the apartment and moved in to his mother's condominium. During September of 1981 the parties had discussions about the separation, the contents of which are in dispute. After these discussions the plaintiff drew up a stipulation agreement, which the debtor signed, and which was later incorporated into a divorce decree dated October 22, 1981. The stipulation provided:

A. The defendant assumes full responsibility for the payment of rent, gas, telephone, and electric until such time as plaintiff elects to vacate the premises at 66–25 103 Street, Forest Hills, New York. At such time the defendant assumes responsibility for the remainder of the lease.

B. All property now at the present address to remain the property of the plaintiff except for the stereo equipment which is the property of the defendant.

C. The defendant will assume all outstanding credit card debts of the plaintiff incurred up to September 1, 1981 and will relieve the plaintiff of these obligations in full.

D. The defendant will pay all costs in connection with this divorce including the costs of the preparation of papers and court fees.

E. Upon relocation of the plaintiff to another apartment the defendant will pay the real estate finders fee for finding the apartment or if the plaintiff does not use a real estate broker, then the defendant will pay the plaintiff's rent for the first month.

Additionally, the parties split a Certificate of Deposit worth $3,000. In December the parties had further discussions concerning the payment of expenses. The nature of these discussions is also in dispute.

In December, 1981 the debtor stopped paying the expenses set forth in Paragraph A of the separation agreement. Subsequently, the plaintiff sued in the Supreme Court, New York County, and in September 1982 she recovered a judgment for arrears plus interest. On June 30, 1983, the debtor filed his chapter 7 petition. By way of the instant action the plaintiff is seeking judgment that the debt based upon the stipulation and state court judgment is nondischargeable under 11 U.S.C. § 523(a)(5). Section 523(a)(5) provides in pertinent part:

(a) A discharge under section 727 … does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

11 U.S.C. § 523(A)(5).

The issue before the court is whether the debt arising from the separation agreement and the judgment is actually in the nature of alimony, maintenance, or support. The debtor argues that the debt is not in the nature of alimony, but rather involves his assumption of the joint indebtedness of the parties and the settlement of the parties' property, and is therefore dischargeable. The plaintiff claims that the debt is in the nature of alimony and is nondischargeable.

The debtor testified that in the discussions held in September of 1981, he and the plaintiff reached an understanding that the plaintiff would move to a cheaper apartment by the end of 1981 at which time he would no longer be obligated to pay the plaintiff's rent. The debtor agreed to pay plaintiff's expenses until such time because he had no rental expense and the payments would provide plaintiff sufficient funds

with which to move. In accordance with this understanding the debtor paid the rent for October and November. Upon the plaintiff's failure to relocate, the debtor informed the plaintiff in December of 1981 that he would consider the plaintiff to have moved to a new residence for purposes of the agreement and that he was relieved from making further rental payments. Near the time of the December discussions, the debtor's mother moved from her condominium and the debtor became obligated to pay the $349.50 monthly maintenance expense.

The plaintiff testified that the debtor had agreed to pay her rental expense, but that whether or when payments would cease was not discussed. According to the plaintiff, the debtor agreed to the stipulation without any extended discussions of the arrangement contemplated therein. The plaintiff testified that she attempted to locate another apartment but was unable to find a comparable one at a lower rental and therefore she decided to remain in the apartment. According to the plaintiff, there was nothing discussed concerning the reason the debtor stopped making payments, other than a statement by the debtor that he wanted to save money to purchase Christmas gifts.

The plaintiff argues that the court may not consider such discussions in any event because the alleged discussions contradict the terms of the agreement and are barred by the parol evidence rule. The plaintiff asserts that the stipulation is "obviously a total integration" embodying the entire agreement of the parties. The court finds, however, that the evidence of the parties' discussions is not barred by the parol evidence rule, and furthermore that the court is obligated to consider them in its determination of the nature of the payments.

■ The parol evidence rule states that when a valid written integrated contract has clear meaning and is unambiguous, absent fraud, accident or mistake, parol evidence which tends to vary or contradict terms of the writing is not admissible. *U.S. v. Wallace Fuel Oil Co.*, 540 F.Supp. 419,

425 (S.D.N.Y.1982). In determining whether the parol evidence rule applies the court must determine whether the written contract between the parties was integrated, i.e. whether the stipulation represents a complete and accurate understanding of the parties, and whether the contract is ambiguous, either in part or in whole. *Id.* at 426.

Paragraph A. of the stipulation provides for the debtor's responsibilities until such time as the plaintiff elects to vacate. This provision appears to contemplate that plaintiff may elect to remain in the apartment permanently. An ambiguity, however, exists as to whether the plaintiff may choose to remain permanently or whether she is only free to elect the time, within reasonable limitations as the parties may have otherwise agreed, to relocate. Paragraph A. also provides that when the plaintiff vacates, the debtor would assume responsibility for the remainder of the lease. The paragraph itself indicates therefore that the parties had some understanding that the plaintiff would vacate the premises at least by July 1983, the month in which the lease terminated.

The debtor's testimony that the parties reached an understanding that the plaintiff would vacate the premises by the end of December 1981 is not inconsistent with a plausible interpretation of the agreement that the plaintiff was to make efforts to move into a new apartment at least some time prior to the expiration of the lease. Two of the five paragraphs of the agreement, which is not an extensive separation agreement, concern themselves with the aspect of plaintiff's moving into a new apartment. Paragraph E. provides that upon the plaintiff's relocation, the defendant will pay certain charges. The agreement, when read as a whole, indicates that the parties likely had some understanding that the plaintiff was to make efforts to relocate, at least upon the expiration of the lease. Such a view, that the plaintiff could "elect" to relocate, but within certain reasonable time parameters, is not inconsist-

ent with either the terms or the thrust of the agreement.

■ The agreement, which was not drafted by the debtor, does not contain an integration clause barring agreements outside of the four corners of the stipulation. Moreover, notwithstanding the parol evidence rule, a bankruptcy court is bound by the statute to look beyond the agreement in order to determine the underlying purpose of the debt assumption; *i.e.*, whether the debts were assumed in lieu of regular alimony payments, or only as a means of dividing property. Such an inquiry must take the bankruptcy court beyond the face of any separation agreement or state court judgment. *In re Petoske,* 16 B.R. 412, 413 (Bankr.E.D.N.Y.1982).

■ Several factors have been considered as a test of the purpose of a separation agreement although no one factor is controlling. These factors include:

(1) The nature of the obligations assumed; necessities indicating the agreement is more in the nature of alimony;

(2) The structure and terms of the contract-*i.e.*, does the agreement evidence an intent or purpose to grant alimony;

(3) Whether the agreement includes a provision for the support of children;

(4) The relative earning power of the spouses;

(5) The parties' negotiations and understandings of the provisions;

(6) The reasonableness of the assumption given the financial condition of the debtor;

(7) Whether there was a division of property and a division of the debts relating to that property;

(8) Whether the former spouse was shown to have suffered in the job market, or was otherwise disadvantaged because of any dependent position held in relation to the debtor during the marriage; and

(9) The age and health of the former spouse.

*Petoske,* 16 B.R. at 414; *In re Calhoun,* 715 F.2d 1103, 10 B.C.D. 1402, 1407–08 (6th Cir.1983); *In re Pody,* 42 B.R. 570, 573, 12 B.C.D. 492, 493 (Bankr.N.D.Ala.1984).

■ After applying these factors to the facts elicited by the credible evidence, the court rules that the plaintiff has not carried her burden of proving that the debt is nondischargeable.

Although payment of rent, an obvious necessity, usually indicates the agreement to be in the nature of alimony, consideration of the other factors dictates a contrary conclusion. The discussions held between the parties; the lack of any intent or purpose evidenced by the structure or terms of the agreement that the agreement be in the nature of alimony; the fact that there was no children of the marriage; the relative equal earning power of the spouses; and the fact that the agreement was largely concerned with the division of property and the assumption of finite debts; indicate that the parties desired a clean split and not an obligation of lasting support. The terms of the stipulation envision an end to the payments, at least upon the expiration of the lease. The debtor testified credibly that the parties expressly contemplated that the plaintiff relocate by the end of 1981 thereby relieving the debtor of his obligation. The intent of the parties that the plaintiff relocate by the end of 1981 or at least by the end of the lease term, indicates that the plaintiff had no legitimate expectations of receiving payments in the nature of support.

The plaintiff was gainfully employed throughout the marriage. At the time of the signing of the stipulation the plaintiff was earning $17,000 and was anticipating a promotion and a raise. Plaintiff received her promotion only a few months after the separation at which time her salary increased to $21,763, a comparable level to the debtor's salary of $23,000.

The debtor, who lives alone, has been paying maintenance charges on his mother's condominium of $349.50 per month. It appears unlikely that the parties intended the debtor to pay for two apartments given the plaintiff's equal capability for support.

Based on the foregoing, the court determines that plaintiff has not met her burden of proving that the debt flowing from the judgment and the stipulation is in the nature of alimony, maintenance or support. The plaintiff's complaint therefore must be dismissed.