In re: Denis BRODY, Debtor.

Carol BRODY, Plaintiff/Appellee,

v.

Denis BRODY, Defendant/Appellant.

Nos. CV 91–0408 (CBA),
CV 91–2296 (CBA).

United States District Court,
E.D. New York.

Jan. 22, 1993.

Edward H. Tillinghast, III, Dreyer & Traub, New York City, for Carol Brody.

Neil Berger, Marc Stuart Goldberg & Associates, New York City, for Denis Brody.

## MEMORANDUM & ORDER

AMON, District Judge.

### INTRODUCTION

This is an appeal from a decision of the United States Bankruptcy Court for the Eastern District of New York which held that appellant Denis Brody's $1,000,000 obligation to appellee Carol Brody was intended to be in the "nature of alimony, maintenance, or support" and therefore nondischargeable under 11 U.S.C. § 523(a)(5)(B). 120 B.R. 696.

1. Hereinafter, unless otherwise noted, all references to "Exh." refer to the collection of exhibits

### PROCEDURAL HISTORY

The parties to this proceeding were married on July 31, 1969. The relationship eventually soured, and appellant moved out of the marital home permanently in June of 1982. After a series of discussions between the parties and their respective attorneys, a Separation Agreement was signed on January 24, 1986 (Exh. A).[1] In Article XII of the Agreement which bore the label "Distributive Award", it was provided that Denis Brody would pay to his wife Carol Brody $1,000,000 in "full satisfaction of all claims which the wife had to equitable distribution of the marital estate or a distributive award in lieu thereof." The award was to be paid according to a specific schedule which provided that $400,000 would be paid by August 1, 1986 or the closing of the title on the marital premises whichever came first, to be followed by four additional payments totalling $600,000 plus 9% interest over a four year period ending August 1, 1990. Article X of the Agreement labelled "Support and Maintenance for the Wife" provided that Carol Brody be paid $825 a month for her support and $2,500 a month for child support. Both payments were to continue for a period of 36 months. The parties were divorced by decree dated April 29, 1987.

In July 1986, appellant made the first Article XII payment of $400,000 to appellee, but failed to make the subsequent payments. These defaults were the subject of a plenary action and two contempt motions brought by appellee in New York State Supreme Court. (*See* Plaintiff/Appellee Carol Brody's Brief, Exh. A, Contempt Judgment dated April 18, 1990).

On May 25, 1988, appellant filed a Chapter 11 bankruptcy petition. On November 16, 1990, appellant's bankruptcy case was converted to a Chapter 7 case. Upon the filing of the petition, appellee became a creditor for the balance of the Article XII obligation.

On September 6, 1988, appellee commenced this action in the United States

labelled "Exhibits from August 3, 1989 Trial" provided to this Court by appellee.

**410**

Bankruptcy Court for the Eastern District of New York, claiming that the Article XII obligation was not a dischargeable debt. The Bankruptcy Court, the Honorable Marvin Holland presiding, conducted a trial on the issue of dischargeability.

Carol Brody, Denis Brody and the attorneys representing them at the time of signing of the Separation Agreement, Dominic Barbara and Michael Ostrow, testified at the proceeding.

## THE TRIAL TESTIMONY

Carol Brody testified that she discussed the issue of support with her husband as early as February 1982 when he still resided in the marital home. At that time, according to Mrs. Brody, her husband offered, apparently in earnest, to match what Johnny Carson paid his second wife Joanne, $100,000 a year for the rest of her life. She rejected this offer since she did not want to have to depend upon him for monthly checks. This lack of confidence in her husband arose from her observation of the dilatory manner in which he made payments to his first wife. (T. 71).[2]

In the fall of 1989, Mrs. Brody reluctantly decided to accept an offer of $1,000,000 made through Mr. Brody's attorneys. Mrs. Brody testified that it was intended that this $1,000,000 would be used for her support. According to Mrs. Brody, her husband thereafter altered the terms of the initial proposal. Rather than paying her the full amount upon the signing of the agreement, he said he would need to pay the $1,000,000 over time—a $400,000 initial payment with the balance of $600,000 plus interest paid over a four year period. She explained that since this arrangement did not initially generate the amount of money required for her support, Denis Brody proposed an additional three year period of separate support payments, those ultimately contained in Article X. According to Mrs. Brody, these were supplemental support payments needed to meet the deficiency created by the staggered payout of the

$1,000,000. (T. 75). Mrs. Brody agreed to this proposal.

As further evidence of their shared intent that the $1,000,000 be used for her support, Mrs. Brody pointed out that the agreement provided for her to assume half of the cost of the children's school tuition upon receipt of the second payment under the agreement. She explained that Denis Brody believed that she would have sufficient funds by this payment to support half of the tuition costs. (T. 80).

Mr. Barbara supported Mrs. Brody's account of the settlement discussions. He explained that the settlement discussions involved a figure of $1,000,000, but that Denis Brody said he was not able to pay that amount in a lump sum as Mrs. Brody wished. He testified that "... their counter offer or discussions were about $100,000 a year or thereabouts in support for Carol. And the entire theory of settlement was always that Carol would never have to worry about working, there would be enough money vested (sic) to throw off enough support or interest for support so she would live; that was always the theory of every settlement and Mr. Denis Brody had been very clear he wanted her to be protected in the deal." (T. 12–13). He later described the negotiations in the following terms: "All the monies were thought of in terms of what it would take to have Carol to be able to support herself, meaning in dollars coming up front and meaning in dollars to be invested." (T. 14–15). Mr. Barbara described the Article XII payments as "an obligation from Mr. Brody to Mrs. Brody to help support her" (T. 38), although he acknowledged that the payments were not alimony or maintenance as defined in domestic relations law. (T. 39).

Mr. Brody's account of the settlement discussions varied substantially from that of Mrs. Brody and her attorney. He explained that accountants had been retained to evaluate the marital assets and that the figure of $1,000,000 to settle the case represented a division of those assets. It was

---

**2.** References with the prefix "T" are to pages of the Transcript of the Trial before Judge Holland.

his belief that those assets were valued at $2,000,000. (T. 116, 117). He denied that Mr. Barbara had expressed a concern about Mrs. Brody's standard of living and testified that it was not his intention that his wife use the $1,000,000 for support. (T. 120). He explained that he understood that after the agreement was signed, the two children would come to live with him and that Mrs. Brody, a lawyer, would be able to support herself. (T. 120). Mr. Brody also provided a different explanation for the timing of the Article X support payments. He contended that the 36–month period for the Article X support payments was agreed to because it was felt by both attorneys and Mr. Brody that even if Mrs. Brody proceeded to trial and prevailed she would not receive a greater award. (T. 122).

Denis Brody's attorney, Mr. Ostrow, testified that he participated in the negotiations with Mrs. Brody and her attorney and that Mr. Brody was present for the meetings. Mr. Ostrow described the $1,000,000 payment as a division of the marital assets and noted that Mr. Barbara had sought security for this obligation because of his concern that the payments would be dischargeable in bankruptcy. (T. 55). Mr. Ostrow explained that there were several reasons for ending the Article X payments after 36 months. One reason was his client's belief that Mrs. Brody, as an attorney, would be capable of supporting herself after three years. Another reason, according to Mr. Ostrow, was that a substantial portion of the equitable distribution award would have been paid out by the end of the three-year period which would generate sufficient income for her support. (T. 60). Having said this, Mr. Ostrow, thereafter, testified that he recalled no discussions concerning what use Mrs. Brody would make of the income from the $1,000,000. (T. 60).

### THE DECISION OF THE BANKRUPTCY COURT

The Bankruptcy Judge credited the testimony of Carol Brody and her attorney and thus necessarily rejected that of Denis Brody. He found that both parties realized and intended that Carol Brody would use some portion of the Article XII payment as support even though Article XII was designated as a Distributive Award in the Separation Agreement. He further found that the Article X payments were intended "to be used to supplement the funds available for her support until the $1,000,000 corpus was intact to produce the full benefit that the parties intended." (Opinion at 13). The Court observed that its conclusion that the Article XII payments provide the basis for support of Carol Brody was founded not solely upon the subjective testimony of the parties but from other circumstances as well. Thus, the Court found there was a need for support, observing that Denis Brody had a much higher earning ability at the time of the execution of the agreement than did his wife. The Court recognized that she was an attorney but noted that she obtained her degree only after sixteen years marriage and had not been able to obtain secure substantial full-time employment. (Opinion at 15). The Court further noted that the label "Distributive Award" for the Article XII payment did not supersede the intent of the parties' agreement.

The Court concluded that although the million dollar figure was a property settlement, that it was 'actually in the nature of alimony, maintenance and support' because both parties intended that one of the primary functions to be served by the property settlement was "to secure the source and the means to generate support." (Opinion at 16). The Court further concluded that it might not be necessary to declare the entire unpaid balance of $1,000,000 nondischargeable: "since what the parties bargained for, agreed to, and memorialized, was a $1,000,000 property settlement out of which Carol Brody would receive annual support in the amount of $100,000. We have no difficulty in holding the annual support obligation non-dischargeable while holding dischargeable only so much of the $1,000,000 as may be unnecessary to generate the agreed upon support which we find to the sum of $100,000 per year." (Opinion at 16).

Finding the record incomplete, the Court provided that a hearing would be scheduled

**412**

to determine the extent to which, if any, the unpaid balance of the $1,000,000 should be declared non-dischargeable as indispensable to constitute the sole source and means of and to assure payment of the non-dischargeable support of $100,000 per year. (Opinion at 17).

Thereafter, a hearing was held on April 16, 1991 before Judge Holland. Denis Brody declined to suggest any alternative financial arrangement to generate $100,000 a year for Carol Brody. (Exh. A to Plaintiff/Appellee Carol Brody's Sur–Reply Brief). On May 7, 1991, Judge Holland issued an order declaring non-dischargeable the obligation of Denis Brody to pay Carol Brody the sum of $600,000 plus interest at 9% per annum from August 1, 1990, and entered judgment against Denis Brody and in favor of Carol Brody in that amount.

Appellant now seeks review of the Bankruptcy Court's decision on dischargeability. Appellant argues that the decision should be reversed for the following reasons. First, appellant argues that the Bankruptcy Court applied an improper legal standard because it determined the intent of the parties based on the court's "own perception of the function of Article XII" rather than looking to the Separation Agreement and other evidence which proved that the award was a property settlement. Second, appellant argues that the Bankruptcy Court improperly applied § 523(a)(5)(B), which only applies to liabilities "designated" as alimony, maintenance or support, and the award in Article XII is labeled a "Distributive Award." Third, appellant contends that appellee failed to prove by clear and convincing evidence that the Article XII award constitutes alimony or support. Appellee contends that the Bankruptcy Court's decision was not clearly erroneous and that the evidence presented at trial supports a finding that Article XII payments were in the nature of alimony, support or maintenance.

### DISCUSSION

Section 523(a)(5) of Title 11 of the United States Code provides that a debt is not dischargeable in bankruptcy if it is a debt

"(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support."

11 U.S.C. § 523(a)(5).

■ At trial, Carol Brody had the burden of proof on the issue of the dischargeability. *In the Matter of Long,* 794 F.2d 928, 930 (4th Cir.1986); Norton Bankr. Rules Pamphlet 1991–1992 Ed, Bankruptcy Rule 4005, p. 295. In order to prevail, she was required to show by a preponderance of the credible evidence that the Article XII payments were "in the nature of alimony, maintenance, or support" within the meaning of 11 U.S.C. § 523(a)(5)(B). *Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).[3] On the evidence before him, the bankruptcy judge held that she met her burden of proof, finding that it was the intent of both parties that the payments set forth in Article XII would function as support for Mrs. Brody, and, therefore, these payments were "in the nature of alimony, maintenance or support."

■ This Circuit has held that a determination whether a financial obligation meets the definition of § 523(a)(5)(B) is a "factual finding," and is to be reviewed on a clearly erroneous standard. *Forsdick v. Turgeon,* 812 F.2d 801, 802 (2d Cir.1987). Bankruptcy Rule 8013 further instructs the district court that "Findings of Fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses." Norton Bankr. Rules Pamphlet 1991–1992 Ed, p. 576.

**3.** In his papers filed before the decision in *Grogan, supra,* appellant refers to the burden of proof as being the higher standard of clear and convincing evidence.

As will be discussed herein, the decision below rested principally on a determination of credibility—a determination uniquely committed to the domain of the trial judge. Had the bankruptcy judge believed the testimony of Denis Brody, Mr. Brody would have prevailed, particularly in light of the language of the Separation Agreement. The Judge, however, did not believe him; instead, after having had the opportunity to evaluate the testimony and observe the demeanor of the witnesses, he credited the account of Carol Brody and her attorney that the principal objective of the Article XII payments was to provide a means for her support. Giving due regard to the opportunity of the Bankruptcy Court to judge the credibility of witnesses, and recognizing that there is corroborative evidence in the record supporting the account of Mrs. Brody, this Court declines to overturn the decision of the bankruptcy judge.

■ An obligation that is "in the nature of alimony, maintenance, or support" is not dischargeable in bankruptcy. 11 U.S.C. § 523(a). Federal bankruptcy law, rather than state law, is applied when determining the character of the debt. *Forsdick*, 812 F.2d at 802; *In re Schwartz*, 53 B.R. 407, 410 (Bankr.S.D.N.Y.1985); *In re Petoske*, 16 B.R. 412 (Bankr.E.D.N.Y.1982). The considerations involved in determining whether or not an obligation is support under state law may be different from those taken into account on the question of dischargeability under bankruptcy law. *In Re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983). Thus, although state law is persuasive because there is no federal domestic relations law, it is not controlling. *In re Schwartz*, 53 B.R. at 410.

■ To determine whether an obligation is in the nature of support, courts must consider the mutual intent of the parties with respect to the purpose of the obligation at the time the agreement was made. Some of the factors that courts have considered when making such a determination are the ability of the creditor spouse to obtain gainful employment, *Forsdick*, 812 F.2d at 803; the characterization given the award by the state court or the

parties, *id.;* the length of the marriage, *In re Eisenberg*, 18 B.R. 1001, 1003 (Bankr. E.D.N.Y.1982); the relative earning power of the parties, *id.;* whether there are children from the marriage, *id.;* whether the obligation balances the income of the parties, *id.;* the structure and terms of the agreement; *In re Bell*, 47 B.R. 284, 287 (E.D.N.Y.1985); whether the agreement contains a provision for support of the children, *id.;* and the parties' negotiations and understanding of the provisions; *id.* Courts are not to look solely to a label that may have been applied to the obligation by either a state court or the parties but instead must look to the purpose of the obligation to determine its true character. *Biggs v. Biggs*, 907 F.2d 503, 505; *In Re Raff*, 93 B.R. 41, 45 (Bankr.S.D.N.Y.1988) ("A Bankruptcy Court should not merely rely on language in a separation agreement").

■ In the present case, the Bankruptcy Court below found that the Article XII payments "do not neatly fall into the property settlement versus maintenance and support dichotomy." (Opinion at 11). In finding that for the purposes of dischargeability, the Article XII obligation was in the nature of alimony, maintenance or support, the Bankruptcy Court cited the following facts:

- The Article XII payments effect a division of marital property, but were intended to provide appellee with support as well.

- After appellant left the marital home, he continued to pay directly the household bills and expenses for appellee and the two children.

- Appellant made an offer to appellee while they were still living together to give her "$100,000 a year for the rest of [her] life." *Id.*

- Appellee rejected appellant's offer of yearly payments based on his history of late payments to his first wife, but accepted his offer of a $1,000,000 lump sum payment.

- Certain aspects of the support agreement appear to have been structured to

provide temporary support to appellee until the Article XII payments were received.[4]

- Mr. Barbara, who drafted the agreement, testified that the content of the various articles of the Separation Agreement was not discussed with the parties.

- Appellee has not been able to obtain full-time employment and received her law degree after 16 years of marriage. Appellant, on the other hand, has a history of earning a high income.

Based on the foregoing facts, the Bankruptcy Court held that the Article XII payments were support obligation and not dischargeable.

Appellant's argument that the Bankruptcy Court failed to determine properly the parties' intent is unfounded. The decision of the Bankruptcy Court reveals that the court considered the testimony of both of the parties, the testimony of the attorneys who negotiated the agreement as well as the language and structure of the agreement. There is no basis for appellant's contention that the court below applied its "own perception of the function of Article XII." The Bankruptcy Court properly considered the purpose of Article XII in order to determine the intent of the parties. *In re Raff,* 93 B.R. at 45.

■ Appellant's claim that a strict construction of § 523 requires that for a debt to be dischargeable it must be "designated as alimony, maintenance, or support" is incorrect. A common sense reading of the statute does not support this view, and appellant has cited no pertinent authority in support of this interpretation. Indeed, the case law uniformly holds that a label assigned to a provision may be considered by a court, but it is not dispositive. *Biggs v. Biggs,* 907 F.2d 503, 505 (5th Cir.1990); *In re Williams,* 703 F.2d 1055, 1057 (8th Cir.1983); *In re Robinson,* 122 B.R. 502 (Bankr.W.D.Tex.1990); *In re Raff,* 93 B.R.

41, 43 (Bankr.S.D.N.Y.1988). As one Bankruptcy Court observed: "In determining whether or not an obligation is designed for the support of a former spouse, the Court must look beyond the separation agreement to the intent of the parties and to the substance of the obligation." *Freyer v. Freyer,* 71 B.R. 912, 916 (S.D.N.Y. 1987) (citations omitted). In the instant case, the Bankruptcy Court considered the fact that Article XII is entitled "Distributive Award;" however, the court found that other evidence established that the purpose of the award was to provide support for appellee. (Opinion at 14).

■ Appellant also argues that appellee has taken contradictory positions with respect to the nature of Article XII. Appellant cites the fact that appellee, in a prior proceeding in state court, contended that Article XII was a nonmodifiable property settlement. *See Brody v. Brody,* Index No. 87–18129, Exh. 11. Although it does appear that appellee has taken contradictory positions in order to suit her needs, the issue for the Bankruptcy Court was to determine the *purpose* of the obligation and "[a] bankruptcy court is not bound by a state court's characterization," especially in cases where the state court was merely interpreting an agreement and not actually determining the award. *See In re Raff,* 93 B.R. at 45; *Forsdick,* 812 F.2d at 802–803. Although under state law an award may be properly determined to be a property settlement, that does not foreclose a determination by a Bankruptcy Court that it constitutes support as that term is used in bankruptcy law. The considerations governing the two decisions are not necessarily the same. *In re Williams,* 703 F.2d at 1055. In the instant case, Judge Holland found the Article XII obligation to "effect a division of marital property" but also found that the *purpose* of the Article XII pay-

---

**4.** Specifically, the bankruptcy court considered Article VIII which provides for payment of the children's private school tuition for the 1986–87 school year and requires appellee to pay one half of the tuition thereafter. This timing coincides with appellee's receipt of the initial $400,000 and appellant's first payment under the schedule set forth in Article XII. The Bank-

ruptcy Court also cited the monthly payments provided for in Article X that were to last only 36 months. The Bankruptcy Court reasoned that the separation agreement was structured in this manner to provide support to appellant until she could support herself from the income generated by the $1,000,000 Article XII payment.

ments was to provide appellant with support. Thus, the Bankruptcy Court has reconciled any contradiction that is presented by the state court's previous rulings and appellee's prior position.

■ Appellant's contention that appellee failed to sustain her burden of proof that Article XII was intended by the parties to be support, although not insubstantial, fails in light of the judge's credibility determinations. Appellant urges that, based on the Separation Agreement alone, the intent of the parties was clear and unambiguous and the nature of Article XII should have been determined from the four corners of the document without reference to testimony. Although the language in the Separation Agreement is fairly straightforward, this Court cannot say the Bankruptcy Court erred in not placing exclusive reliance on the agreement to ascertain the intent of the parties. As one court observed:

> [n]otwithstanding the parol evidence rule, a bankruptcy court is bound by the statute to look beyond the agreement in order to determine the underlying purpose of the debt assumption; i.e., whether the debts were assumed in lieu of regular alimony payments, or only as a means of dividing property. Such an inquiry must take the bankruptcy court beyond the face of any separation agreement or state court judgment. (Citation omitted).

*In re Bell,* 47 B.R. 284, 287 (E.D.N.Y.1985); *see also, Tilley v. Jessee,* 789 F.2d 1074, 1078 (4th Cir.1986) (even where an agreement clearly separates alimony from a property settlement the agreement is not determinative, although "a substantial obstacle ... to overcome"). Thus, it was not error for the Bankruptcy Court to look beyond the Separation Agreement to determine the character of the Article XII payments.

Appellant further argues that even assuming it was proper to go beyond the language of the Separation Agreement, the evidence presented to the Bankruptcy Court supports the conclusion that Article XII was intended to be a property settle-

ment. Appellant contends that the negotiations between the parties prior to the execution of the agreement are evidence of their mutual intent to create a property settlement only. This is not the case if one credits, as did the Bankruptcy Judge, the testimony of Mrs. Brody and her counsel Mr. Barbara. Their testimony establishes that the parties discussed and intended that the $1,000,000 payment would provide appellee with enough income to live on for the rest of her life. (T. 15; 75). Moreover, the financial status of the parties supports the conclusion that Article XII was meant to provide support to appellee. Thus, it was not unreasonable to conclude that the primary function of the Article XII obligation was to provide Mrs. Brody with income for her support. *See In re Messnick,* 104 B.R. 89 (Bankr.E.D.Wis.1989) (periodic payments that were part of property settlement were intended to provide support to wife and were not dischargeable).

Appellant's final argument, that the Bankruptcy Court inappropriately reformed the Separation Agreement to order him to provide appellee with $100,000 per year, is mooted. Subsequently, the judge declared the entire balance of the $600,000 obligation to be non-dischargeable.

### CONCLUSION

For the reasons set forth above, the decision of the Bankruptcy Court as to the dischargeability of the Article XII payment obligation is not clearly erroneous and is hereby affirmed.

SO ORDERED.