OPINION OF THE COURT
David B. Saxe, J.
*1007 The parties were married on September 20, 1981, and have three children, twin girls born in 1984 and a son born in 1982. The children all attend exclusive private schools in Manhattan.
At the time of the marriage, Mr. Kerzner owned 50% of K&K Merchandising Group, Inc. (K&K); the other 50% was owned by Mr. Kerzner’s sister and brother-in-law. In 1982 Mr. Kerzner purchased that other 50% interest.
In 1987 the couple purchased for their residence a five-story brownstone on East 95th Street in Manhattan, for $934,000. Mrs. Kerzner and the children still reside there, and its value at the time of trial was, according to two experts, either $1.2 million or $1.4 million. The parties also own a country house in Pennsylvania worth $140,000 and an apartment in Tel Aviv valued at $420,000.
In the years prior to the action the parties lived an extremely affluent lifestyle. They traveled extensively, dined regularly at fine restaurants, and for a time employed a live-in couple to serve as cook, housekeeper, chauffeur and babysitter. Merely considering the materials used and expenses incurred in the renovations to their townhouse speaks volumes. The residence has its own elevator and two gardens; it contains 12 telephone extensions, and nine television sets with cable connections. Their normal living expenses were in the range of tens of thousands of dollars per month.
The couple separated in November of 1990. This action was commenced on August 5, 1991.
SPOUSAL MAINTENANCE
Prior to the marriage, Mrs. Kerzner had worked as a sales representative in the garment industry, and in 1980, the year before the marriage, she earned commissions in excess of $100,000, as well as a salary. However, she ceased her full-time employment in the industry when the couple married and started a family. She will not be able to rejoin the industry full time until her children finish high school. She could earn some income with a part-time job, and, given her personality and skills, I have no doubt that she would be able to obtain full-time employment as soon as she seeks it. Nevertheless, she will not for some time yet be able to earn on her own the level of income she enjoyed in the later years of the marriage.
In recognition of the parties’ standard of living during the marriage and my finding that Mr. Kerzner has a history of nondisclosure of income (the extent of which this court has no *1008 way to determine), I conclude that Mrs. Kerzner is entitled to an award of maintenance for an eight-year period which will permit her to maintain a level of affluence similar to that enjoyed by the parties during the marriage.
At this juncture, it must be recognized that Mrs. Kerzner, like her husband, has had the unacknowledged use of funds derived from marital assets. She has treated the income from the Tel Aviv apartment as her separate income. However, I disagree with Mr. Kerzner’s suggestion that equitable distribution be adjusted to reflect this. Particularly given Mr. Kerzner’s constant state of arrears in support, I believe Mrs. Kerzner’s appropriation of the full income from the apartment is best considered in the context of support rather than equitable distribution. Therefore, Mr. Kerzner should be credited with one half of the sums Mrs. Kerzner received from collecting rent on the Tel Aviv apartment during the litigation, as against any future determination of support arrears.
Additionally, in view of Mr. Kerzner’s long history of nonpayment of court-ordered obligations (irrespective of whether funds are actually available), and his repeated references to the possibility of his filing for bankruptcy, I agree with Mrs. Kerzner that steps should be taken to protect her ability to obtain the sums awarded her.
I have already granted Mrs. Kerzner’s application for a receiver over the business. However, I recognize that a receivership will not always successfully protect the nontitled spouse. Particularly since K&K is a one-man operation, and any alteration in the manner of its doing business can be offered as grounds to cancel the line of credit and/or the Sony contract, the business may in any case become defunct and this form of protection useless.
An additional threat to Mrs. Kerzner’s collecting the sums due to her is the possibility that Mr. Kerzner could declare bankruptcy, an eventuality he has mentioned more than once. A distributive award could be deemed discharged in bankruptcy (see, In re Vittorini, 136 Bankr 632; In re Brody, 3 F3d 35), as would any obligation on Mr. Kerzner’s part to pay off the mortgage on the 95th Street brownstone (11 USC § 523 [a] [15]), although I view the latter as part of his maintenance obligation. Because spousal maintenance and child support obligations are not dischargeable in bankruptcy (see, 11 USC § 523 [a] [5]), Mrs. Kerzner may be better protected another way. That is, her maintenance award for the period of time until she receives-her distributive award can be increased to *1009 cover the full extent of her expenses as reflected in the parties’ former lifestyle; maintenance would then be reduced once the distributive award is paid.
The parties’ lifestyle prior to commencement of this action was one of tremendous luxury. They had several residences, employed full-time staff, and traveled extensively. Although the nature of the proof made it impossible for me to calculate exactly the amounts of cash which supported that lifestyle, I find credible the testimony of several friends and acquaintances of Mrs. Kerzner, as well as that aspect of Mrs. Kerzner’s own testimony, which indicated that much of the parties’ lifestyle was founded upon the expenditure of large amounts of cash. Specifically, friends and neighbors testified that Mrs. Kerzner always carried large amounts of cash, usually in large denominations, and on her very frequent shopping excursions spent hundreds of dollars, always in cash. Furthermore, even larger amounts of cash — in the thousands and tens of thousands — were typically available in their home. For instance, one friend testified that when Mrs. Kerzner informed her husband without warning that she had borrowed $3,000 from the friend, Mr. Kerzner simply walked into his bedroom and returned with $3,000 in cash. There was also testimony that Mr. Kerzner paid tens of thousands in cash to the seller in the context of a purchase of real estate in Florida.
Indeed, further support for the conclusion that the couple lived off cash income from K&K is found in the testimony of Mr. Kerzner’s bookkeeper, Adele Suskind, who indicated that cash received by K&K was given directly to Mr. Kerzner, who subsequently handed Ms. Suskind cash amounts for deposit.
In view of the parties’ former lifestyle, as well as my conclusion that Mr. Kerzner has substantial control over his company’s earnings and its funds and is capable of earnings along these lines, the amount of maintenance which is appropriate here comes to $21,000 per month. Until defendant pays plaintiff the distributive award, this sum shall be payable as spousal maintenance for a period of eight years, commencing on the date of the judgment to be entered hereon. At such time as Mrs. Kerzner actually receives the sum I have awarded as a distributive award, the amounts she would be able to earn from that sum would obviously reduce her need for payment of maintenance. Therefore, upon Mr. Kerzner’s payment of the distributive award, his maintenance obligation shall be reduced to $9,000 per month, and shall end at the end of eight years.
This maintenance provision, which is intended to realistically recognize the likelihood that Mrs. Kerzner will never be *1010 able to successfully collect the distributive award provided for herein, does not fully protect her or provide an alternative or equivalent for collecting the award, since it is only in effect for the period during which she is entitled to receive maintenance, and does not amount to the same sum. It is simply a form of relief which is within the court’s authority and discretion to award which makes possible the approximation of doing justice in the context of equitable distribution under such circumstances.