In re Stuart J. KERZNER, Debtor.

Stuart J. Kerzner, Plaintiff,

v.

Rina Yakuel Kerzner, Defendant–Counterclaimant.

Bankruptcy No. 97–B–44473(BRL).
Adversary No. 97–8738A.

United States Bankruptcy Court,
S.D. New York.

July 17, 2000.

---

Gabriel Del Virginia, Gabriel Del Virginia, New York City, for the Plaintiff.

Tracy L. Klestadt, Tracy L. Klestadt & Associates, New York City, for the Defendant-Counterclaimant.

## MEMORANDUM DECISION DENYING RINA YAKUEL KERZNER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING STUART KERZNER'S CROSS–MOTION FOR SUMMARY JUDGMENT

BURTON R. LIFLAND, Bankruptcy Judge.

Previously, a settlement (the "Settlement Agreement") designated as a global compromise and settlement of all the litigation in this court in which the chapter 7 trustee is a party, resulted in a cash payment to the estate of $1.5 million, a partial discharge to the debtor, Stuart Kerzner, effective to all creditors but his former spouse, Rina Yakuel Kerzner. With respect to Mrs. Kerzner, $3.7 million in claims were acknowledged as nondischargeable. Mrs. Kerzner also holds an additional $1.8 million claim which she now seeks summary judgment as to the issue of dischargeability. Mrs. Kerzner contends that the $1.8 million distributive award is "actually in the nature of alimony, maintenance, or support," and therefore nondischargeable under section 523(a)(5)(B) of the Bankruptcy Code. Stuart Kerzner opposes the motion, and in addition, crossmoves for summary judgment, finding the $1.8 million award dischargeable under section 523(a)(5).

### Background

On January 21, 1997, Mr. Kerzner filed a voluntary petition for reorganization pursuant to chapter 11 of the Bankruptcy Code in the Southern District of Florida (the "Florida Bankruptcy Court"). On February 4, 1997, Mr. Kerzner initiated this adversary proceeding by filing a complaint to determine, among other things, dischargeability of debt under section 523(a)(15) of the Bankruptcy Code. On May 22, 1997, the Florida Bankruptcy Court converted Mr. Kerzner's chapter 11

case to one under chapter 7 of the Bankruptcy Code. On June 27, 1997, Mrs. Kerzner filed a counterclaim to Mr. Kerzner's complaint, seeking to bar dischargeability of debt under sections (a)(5) and (a)(15) of the Bankruptcy Code. Upon motion of Mrs. Kerzner, the entire case was then transferred to this court and a trustee was appointed.

Almost ten years ago, Mrs. Kerzner commenced divorce proceedings against Mr. Kerzner in the Supreme Court, State of New York (the "Divorce Court"). The Divorce Court conducted a 53–day trial to determine child support, maintenance, and equitable distribution issues. Pursuant to the decision and judgment entered in the Divorce Proceeding, see *Kerzner v. Kerzner*, 170 Misc.2d 1006, 653 N.Y.S.2d 219 (N.Y.Sup.Ct.1996) (hereinafter the "Divorce Decision"),[1] the marital assets were distributed between Mrs. Kerzner and Mr. Kerzner. Justice Saxe awarded Mrs. Kerzner the Kerzners' real estate in New York and Tel Aviv, as well as half the value of profit sharing/pension plan and IRA accounts. Mr. Kerzner received all of the stock in several companies (the "K & K Entities"), in which he was the sole shareholder, the ownership interest in another company, Action Distributors, a house in Pennsylvania, and all cash holdings. The K & K Entities alone were valued by the court at $5.2 million. Because the property awarded to Mrs. Kerzner was valued at approximately $2 million, Justice Saxe awarded Mrs. Kerzner an additional $1.8 million distributive award to compensate for the award of K & K Entities to Mr. Kerzner. In this way, Mrs. and Mr. Kerzner were awarded equal shares of the marital estate.

The Divorce Decision directed that a receiver be appointed for the K & K Entities. In addition the Divorce Court awarded Mrs. Kerzner an increased maintenance

award until the distributive award was paid, realizing that:

> ... a receivership will not always successfully protect the non-titled spouse. Particularly since K & K is a one-man operation, ... the business may in any case become defunct and this form of protection useless.

> An additional threat to Mrs. Kerzner's collecting the sums due to her is the possibility that Mr. Kerzner could declare bankruptcy, an eventuality he has mentioned more than once. A distributive award could be deemed discharged in bankruptcy [citing cases] ... Because spousal maintenance and child support obligations are not dischargeable in bankruptcy (see, 11 U.S.C. § 523(a)(5)), Mrs. Kerzner may be better protected in another way. That is, the maintenance award can be increased to cover the full extent of her expenses as reflected in the parties' former lifestyle; maintenance would then be reduced once the distributive award is paid.

*Divorce Decision*, 653 N.Y.S.2d at 220

In order to implement his plan, Justice Saxe included on page 20 of the Judgment of Divorce the following language:

> ORDERED AND ADJUDGED, that, until such time as the distributive award is made in full, defendant, shall pay to the plaintiff ... the sum of $21,000 per month in maintenance for her support, commencing on the date that this judgment is entered and continuing for a period of eight years. Upon defendant's payment in full of the $1,819,780.25 distributive awarded [sic] provided herein, this maintenance obligation shall be reduced to $9,000 per month, and shall end at the end of eight years from entry of this judgment....

Justice Saxe also directed Mr. Kerzner to pay Mrs. Kerzner $4350 per month in child support for their three children, the children's tuition and medical expenses,

---

**1.** Only portions of Justice Saxe's decision are reported at 170 Misc.2d 1006, 653 N.Y.S.2d 219. Where applicable the court will cite to

the full decision, *Kerzner v. Kerzner*, No. 69783/91 (N.Y.Sup.Ct. Dec. 4, 1996).

and the mortgage on the 95th Street brownstone home.

It remains undisputed that, as of this date, the $1.8 million distributive award has not been paid, and that Mr. Kerzner owes more than the sum of $1.7 million in nondischargeable outstanding maintenance and support arrears.

**Discussion**

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7056, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). On a summary judgment motion, the moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Certain Funds on Deposit in Scudder Tax Free Inv. Account No. 2505103*, 998 F.2d 129, 131 (2d Cir.1993); *Thomson McKinnon Sec. Inc. v. Leasure (In re Thomson McKinnon Sec. Inc.)*, 132 B.R. 9, 11 (Bankr.S.D.N.Y.1991). Once the movant has made its showing, the burden of production shifts to the non-movant who must "go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, establish that there is a specific and genuine issue of material fact warranting a trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56).

In the present case, the issue before the Court is whether, based on Justice Saxe's Divorce Decision and Judgment of Divorce, the Debtor's obligation to pay his former wife an award of $1.8 million should be excepted from discharge as being in the nature of support or maintenance. As such, it is a legal issue, turning on this Court's interpretation of the Divorce Decision, and does not involve a genuine issue of material fact.

Under the Bankruptcy Code, a debt owed to a former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, is not dischargeable. 11 U.S.C. § 523(a)(5). Property settlements, on the other hand, are dischargeable in bankruptcy. *See Brody v. Brody (In re Brody)*, 3 F.3d 35, 38 (2d Cir.1993).

An obligation's status as alimony, maintenance or support exempted from discharge by section 523(a)(5) is a question of federal bankruptcy law separate and distinct from state law, and any label given the obligation, whether by the parties or the state court, is not dispositive. *Id.* at 39, (citing *Forsdick v. Turgeon*, 812 F.2d 801, 802 (2d Cir.1987)); H.R.Rep. No. 595, 95th Cong., 2d Sess. 364 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963. *See also Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). A bankruptcy court must assess the intention and effect of a state court's domestic relations award to determine whether that award is well calculated to further the support or maintenance of the former spouse, or whether it effectuates some other purpose, such as a division of property. *Cook v. Bieluch (In re Bieluch)*, 219 B.R. 14, 20 (Bankr.D.Conn.1998)

The party opposing the discharge of the particular debt has the burden of establishing that such obligation is nondischargeable on the ground that it is actually

in the nature of alimony, maintenance or support, because the concept of dischargeability under section 523 must begin with the assumption that dischargeability is favored under the Bankruptcy Code. *Vittorini v. Vittorini (In re Vittorini)*, 136 B.R. 632, 634–35 (Bankr.S.D.N.Y.1992) (citing *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986)); *see also Calhoun v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1111 (6th Cir.1983.); *In re Bieluch*, 219 B.R. at 18. Mrs. Kerzner has failed to meet that burden.

■ A debt to a former spouse is "in the nature of alimony, maintenance or support" to the extent that it is intended, and in fact functions, to provide support to the former spouse. *In re Bieluch*, 219 B.R. at 20. Bankruptcy courts have focused on whether a given obligation either (i) addressed the unequal earning capacities of the parties—suggesting a nondischargeable "support" purpose, or (ii) allocated the marital assets—suggesting a dischargeable property division. *Id.*

The courts have established various flexible factors to be considered in ascertaining whether an obligation is a property settlement or is in the nature of alimony, support, or maintenance. Some of the factors include: (1) the characterization given the award by the state court, (2) the ability of the nondebtor spouse to obtain gainful employment, (3) the income and needs of the parties at the time of Divorce Decision (4) whether there are children from the marriage, (5) whether the obligation terminates on obligee's death or remarriage, or emancipation of children, (6) whether a traditional support award would have been adequate in the absence of the obligation in question. *In re Bieluch*, 219 B.R. at 20; *Brody v. Brody (In re Brody)*, 154 B.R. 408, 413 (E.D.N.Y.1993) *aff'd* 3 F.3d 35 (2nd Cir.1993); *In re Vittorini*, 136 B.R. at 635; *Bonheur v. Bonheur (In re Bonheur)*, 148 B.R. 379, 382 (Bankr.E.D.N.Y.1992)

After many acrimonious years and a long and expensive trial in the state court, Justice Saxe issued the Divorce Decision.

In that decision, Justice Saxe acknowledged the fact that any property settlement awarded to Mrs. Kerzner would be jeopardized by a bankruptcy filing on the part of Mr. Kerzner. Thus, Justice Saxe sought to fashion a remedy whereby Mrs. Kerzner would have some protection. In turning to the issue of spousal maintenance, Justice Saxe concluded that Mrs. Kerzner was "entitled to an award of maintenance for an eight-year period, which will permit her to maintain a level of affluence similar to that enjoyed by the parties during marriage." *See Divorce Decision*, 653 N.Y.S.2d at 220. Justice Saxe initially determined that Mrs. Kerzner was entitled to spousal maintenance in the amount of $9,000 per month. However, fearing that Mr. Kerzner would file bankruptcy, as he had threatened to do, Justice Saxe increased the monthly support payments from $9,000 to $21,000 until such time as Mr. Kerzner paid an amount approximating the full $1.8 million Distributive Award. In his decision, however, even Justice Saxe specifically noted that "a distributive award could be deemed discharged in bankruptcy, as would any obligation on Mr. Kerzner's part to pay off the mortgage on the 95th Street brownstone, *although I view the latter as part of his maintenance obligation." See Divorce Decision*, 653 N.Y.S.2d at 220 (internal citations omitted) (emphasis added). In light of Justice Saxe's findings and determinations, and the factors to be considered under section 523(a)(5), it is clear to this court that the Distributive Award is a not "alimony, maintenance or support" within the meaning of that section. Justice Saxe essentially earmarked the difference between $9,000 and $21,000 as nondischargeable maintenance, awarded in lieu of the anticipated interest that the $1.8 million distributive award would earn for Mrs. Kerzner. It was this heightened monthly award, not the $1.8 million distributive award, that was intended by the Divorce Court to function as maintenance for Mrs. Kerzner. Mr. Kerzner does not contest

that this $12,000 portion of alimony and maintenance is non-dischargeable; in fact, he has conceded as much in the Settlement Agreement.

Mrs. Kerzner contends that the entire $1.8 million award, in addition to the $21,000 per month award, is intended to function as maintenance. In support of this, she sets forth an argument roughly tracking the reasoning found in *Brody*. In *re Brody*, 3 F.3d 35. In that case a $1,000,000 distributive award owed to the nondebtor spouse was held to be nondischargeable to the extent that it was needed to generate $100,000 per year in interest for the nondebtor spouse to use for living expenses. *Id.* at 38. In reviewing the intent of the settlement agreement, Bankruptcy Judge Holland found that the parties' envisioned a payment arrangement whereby Mrs. Brody would receive $100,000 per year in support. However, in order to avoid the risk of late or missing payments by Mr. Brody, Mrs. Brody favored a lump sum payment, which could generate the same support in the form of interest. *In re Brody*, 154 B.R. at 410 *aff'd* 3 F.3d 35 (2nd Cir.1993). In this way, the $1,000,000 distributive award was necessary, and certainly intended, to generate the requisite support per year.

■ The present case involves a divorce decree and not a settlement agreement. Therefore, "it is the intent of the court issuing the decree that is controlling and the court's intention has to be gathered from its language." *Grasmann v. Grasmann (In re Grasmann)*, 156 B.R. 903, 909 (Bankr.E.D.N.Y.1992) (citing *In re McCauley*, 105 B.R. 315 (E.D.Va.1989)). By looking to the plain language of the Divorce Decision, it is clear that Justice Saxe anticipated that Mr. Kerzner would file for bankruptcy. To protect Mrs. Kerzner, and to help maintain her lifestyle as it was during marriage, he fashioned a heightened maintenance award of $21,000 per month for eight years. This would be reduced to $9,000 per month once Mr. Kerzner paid the full distributive award.

As, Mrs. Kerzner points out, it appears that the additional $12,000 per month reflects the money she would be able to earn by investing the $1.8 million award at an annual interest rate of 8%. From this, she reasons that the $1.8 million award was intended to function as support in the same way the $1,000,000 award in *Brody* was found to be intended as support.

Indeed it does seem clear that Justice Saxe intended for the heightened monthly award to function as support or maintenance, however, because of this heightened award the $1.8 million dollar distributive award is no longer needed to generate support in the form of interest. The Divorce Decision, in anticipating the dischargeability of the $1.8 million award, created a built-in alternative to interest revenues from that award. Moreover, in *Brody*, the Bankruptcy Court was prepared to find nondischargeable only so much of the $1 million award as was needed to generate the annual $100,000 in support. In the end the entire amount was found to be needed, but this was in large part because Mr. Brody did not offer any alternative form of payment to generate the annual support needed. *Brody v. Brody (In re Brody)*, 120 B.R. 696, 704 (Bankr.E.D.N.Y.1990) *aff'd* 154 B.R. 408 (E.D.N.Y.1993) *aff'd* 3 F.3d 35 (2nd Cir. 1993) ("If Denis Brody is able to assure payment to Carol Brody of the agreed support other than from the $1,000,000 property settlement, then the nondischargeability of that sum is not necessary"). Conversely, in the present case, Justice Saxe went out of his way to create an alternative to revenue generated from the distributive award.

Mrs. Kerzner, also relies on two New York cases in which a distributive award that was given to the nondebtor spouse in a divorce decree was held nondischargeable. The awards were given to compensate the nondebtor spouses for the heightened earning ability of the debtor spouses as the result of a medical degree obtained during the marriage. *See generally In re*

*Grasmann*, 156 B.R. 903; *Raff v. Raff (In re Raff)*, 93 B.R. 41 (Bankr.S.D.N.Y.1988). These cases are inapposite. Earnings stemming from a medical degree are fundamentally different than the $1.8 million award at issue here. During the marriage, the earnings from the medical degree function directly as support for the family. Moreover, in both the cases cited, the nondebtor-spouse contributed significantly in enabling the debtor-spouse to earn the medical degree. After the divorce, the nondebtor-spouse continued to rely on the financial support derived from that degree. While holding that heightened earnings from a medical degree were in the nature of support, the *Raff* court noted that the nondebtor spouse had an "expectation that her standard of living would be improved by aiding her spouse in acquiring a professional degree." *In re Raff*, 93 B.R. at 48. It further held that "each spouse is entitled to acquire support and benefits from the enhanced standard of living the debtor is able to acquire." *Id.* at 49. Just as these heightened earnings were used for support during the marriage, so too should they provide support after the divorce, particularly where the nondebtor spouse played a pivotal role in obtaining the medical degree during the life of the marriage.

■ In contrast, the $1.8 million distributive award in the present case was created by Justice Saxe in order to compensate Mrs. Kerzner for the otherwise unequal distribution of property under the Divorce Decision. In particular, Justice Saxe gave sole ownership of the K & K Entities, valued at $5.2 million, to Mr. Kerzner. After awarding Mrs. Kerzner the two most valuable (of the three available) real estate holdings, Justice Saxe was still left to contend with an approximately $3.9 million disparity from Mr. Kerzner's award. The $1.8 million distributive award was therefore created to balance the scales. It functions as a compensatory remedy and does not at all appear to have been intended to function as support or maintenance. Furthermore, while the labels assigned to the various awards by the Divorce Court are not controlling, it is persuasive that the $1.8 million award was set forth in a section of the decision titled "equitable distribution," while the $21,000 per month award was set forth in a section titled "spousal maintenance." *Kerzner v. Kerzner*, No. 69783/91 at 2, 18 (N.Y.Sup.Ct. 1996).

One of the cases that Mrs. Kerzner relies upon, *In re Raff*, illustrates the distinction between awards intended as property settlements and those intended as maintenance. While finding an award reflecting the heightened earnings from a medical degree nondischargeable, the court noted that "[i]n this case, the distributive award is not in the nature of dividing a house or land or paying off outstanding debts to creditor's of both spouses, which often indicate a dischargeable property settlement." *In re Raff*, 93 B.R. at 48 (citing *Barth v. Barth*, 448 F.Supp. 710 (E.D.Mo. 1978)). Quite unlike *Raff*, in this case the distributive award was a property division, which according to the *Raff* court "indicate[s] a dischargeable property settlement." *Id.*

■■ In general, where the intent of the Divorce Court is clear from its decision, the Bankruptcy Court need not look beyond the "four corners" of that document to make its determination. *See In re Grasmann*, 156 B.R. at 907. However where the intent is less than clear, or in any event to assist making the determination on dischargeability, the Bankruptcy Court will look to a series of factors to help make its determination. *See Raff* 93 B.R. at 47; *supra* at 492.

■ To begin, the label given to the $1.8 million award by the Divorce Court, while not controlling, should be given great weight. "Because extraneous factors, such as business or tax considerations, are less likely to affect court orders, more weight is generally given to the labeling of an obligation in a court order as opposed to the labels in an agreement." L. KING, 4

COLLIER ON BANKRUPTCY, ¶ 523.11[6][a] (15th ed.2000). In light of this, and because Justice Saxe systematically referred to the $1.8 million award as the "distributive award" and the $21,000 per month as a "maintenance obligation," the intent to label the award in question as a distributive award should be given great deference by this court.

■ Mrs. Kerzner's ability to obtain gainful employment is also helpful in determining the intent of the Divorce Court. Justice Saxe found that Mrs. Kerzner enjoyed a successful career in the garment industry prior to her marriage in 1991, in which "she earned commissions in excess of $100,000, as well as a salary." *See Divorce Decision,* 653 N.Y.S.2d at 220. This stands in contrast to several of the cases cited by Mrs. Kerzner, in which there was a greater disparity of employment potential between the spouses. *See e.g. In re Brody,* 154 B.R. at 414 (nondebtor spouse was not able to obtain full-time employment and received her law degree after 16 years of marriage, while the debtor spouse had a history of earning a high income); *In re Grasmann,* 156 B.R. at 905 ("Dr. Grasman's enhanced earning power was $450,000 in 1989 ... [i]f [the nondebtor spouse] works full-time she earns from $25,000 to $35,000 per year"). While recognizing Mrs. Kerzner's talents, the Divorce Court also anticipated difficulties she might face in re-establishing her previous income. As a result, Justice Saxe required the support payments, including the additional $12,000, to continue for eight years so that Mrs. Kerzner could enjoy the same level of affluence as she had during her marriage. In light of both Mrs. Kerzner's more favorable employment prospects, as compared to previous cases, and the additional support already set aside for her, it is clear that the $1.8 million award was intended to serve only as a property settlement.

■ "Probably the most important factor looked to by courts deciding the dischargeability of marital obligations ... is the financial situation of the parties at the time the obligation is agreed upon or decided by the court." *In re Bonheur,* 148 B.R. at 382. Clearly Mr. Kerzner was in a superior financial situation as the sole owner of the K & K Entities, and Mrs. Kerzner was left with the custody and responsibility of caring for the couples' three children, while her career was kept on hold. These considerations could be indicative of the need for additional support. However, Justice Saxe considered these facts in determining both the monthly support payments for Mrs. Kerzner and the children. *See Kerzner,* No. 69783/91 at 22–23. As noted, Mrs. Kerzner was awarded $21,000 per month in maintenance, and an additional $4,350 per month in child support. In addition, Mr. Kerzner was obligated to pay the children's tuition for private school and college, any necessary tutoring, and transportation costs and medical expenses, as well as the mortgage on the 95th Street Brownstone. *Kerzner,* No. 69783/91 at 23. Accordingly, the $1.8 million award was not necessary for the support of Mrs. Kerzner and her children.

■ Where an award terminates on death or remarriage of the obligee or the emancipation of the parties' children it is likely to have been intended for support. *Fitzgerald v Fitzgerald (In re Fitzgerald),* 9 F.3d 517, 521 (6th Cir.1993). Although not controlling, the $1.8 million award is not conditional on any such event, and it is directed to be paid in a lump sum. These factors are further indications that the award was intended as a property settlement.

■ Finally, it is important to consider whether a traditional support award would have been adequate without the award in question. *In re Bieluch,* 219 B.R. at 20. Because Justice Saxe was skeptical of Mr. Kerzner's ability and/or willingness to pay the $1.8 million dollar award, he designed a special maintenance award payment plan, which stands at $21,000 per month for eight years unless the $1,8 million

award is paid. While it is arguable whether $9,000 per month would have been sufficient absent the $1.8 million award, Justice Saxe found that the heightened award of $21,000 per month is adequate. Furthermore, it is important to note that if a $21,000 per month schedule is maintained for the duration of eight years, Mrs. Kerzner will ultimately collect $1,152,000 beyond her base maintenance award of $9,000 per month.

In consideration of the aforementioned reasons, the motion for summary judgment brought by Mrs. Kerzner is denied, and the cross-motion brought by Stuart Kerzner, declaring the $1.8 million distributive award dischargeable, is granted.

Submit an order consistent with this ruling.