In re Jeffrey S. BUTLER, Debtor.

Erin Young, Plaintiff,

v.

Jeffrey S. Butler, Defendant.

Bankruptcy No. 97–47316(AJG).
Adversary No. 98–8326A(AJG).

United States Bankruptcy Court,
S.D. New York.

April 23, 2004.

Sherman, Citron & Karasik, P.C., Howard Karasik, Of Counsel, New York City, for Plaintiff.

Ochs & Goldberg, LLP, Martin P. Ochs, Of Counsel, Taub & Showman, LLP, Malcolm S. Taub, Of Counsel, New York City, for Debtor–Defendant.

**MEMORANDUM DECISION, AFTER TRIAL, REGARDING OBJECTION TO DEBTOR'S DISCHARGE UNDER BANKRUPTCY CODE SECTION 727 AND OBJECTIONS TO DISCHARGEABILITY OF CERTAIN DEBTS UNDER BANKRUPTCY CODE SECTION 523**

ARTHUR J. GONZALEZ, Bankruptcy Judge.

The issues before the Court are: (1) whether the plaintiff abandoned her timely-filed objection to the debtor's discharge pursuant to section 727 of United States Bankruptcy Code (the "Bankruptcy Code" and, unless otherwise specified, all references to "section" herein refer to sections

of the Bankruptcy Code); (2) whether, pursuant to Rule 15(b) of the Federal Rules of Civil Procedure ("Rule 15(b)"), the plaintiff may amend her pleadings to conform to evidence presented in the adversary proceedings to assert that her claims against the debtor are nondischargeable pursuant to section 523(a)(2)(B); (3) whether, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure ("Rule 15(c)"), the plaintiff's section 523(a)(2)(B) contention relates back to her complaint and, therefore, her contention is not time-barred by Rule 4007(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule"); (4) whether the debtor's outstanding spousal, maintenance and child support obligations pursuant to the parties' marital agreements and New York state court judgments and orders are nondischargeable pursuant to section 523(a)(5); (5) whether certain monthly payments of the debtor due to the plaintiff under the modification agreement to their separation agreement and certain legal fees incurred by the plaintiff in court enforcement-related proceedings both constitute support and are nondischargeable pursuant to section 523(a)(5); (6) whether, if certain amounts at issue are not determined as being nondischargeable under sections 523(a)(2)(B) or 523(a)(5), such amounts are nevertheless nondischargeable pursuant to section 523(a)(15)(B); and (7) whether the debts determined to be nondischargeable are nonetheless dischargeable pursuant to section 523(a)(15)(A).

Upon consideration of the parties' pleadings and the entire record of the hearings of this adversary proceeding, the Court finds: (1) that the plaintiff abandoned her timely filed objection to the debtor's discharge pursuant to section 727; (2) that (a)

the debtor's outstanding spousal, maintenance and child support obligations pursuant to the parties' marital agreements, and (b) the New York state court judgments and orders are nondischargeable pursuant to section 523(a)(5); and (3) that (a) certain monthly payments of the debtor to the plaintiff under the modification agreement to their separation agreement, and (b) the plaintiff's outstanding legal fees incurred to date pursuant to her New York state court enforcement proceedings as well as adversary proceedings in this case, all constitute support and are nondischargeable pursuant to section 523(a)(5). Therefore, there is no need to address the plaintiff's Rule 15(b) and (c) contentions and the remaining contentions pursuant section 523(a)(15) are moot as to the plaintiff and denied as a matter of law to the debtor.[1]

## I. Jurisdiction And Venue

The Court has subject matter jurisdiction over this adversary proceeding under sections 1334(b) and 157(a) and (b) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding within the meaning of section 157(b)(2)(I) and (J) of title 28 of the United States Code.

Venue is proper before this Court pursuant to section 1409(a) of title 28 of the United States Code.

## II. Background

### A. *Non–Bankruptcy Matters*

#### 1. *Divorce Judgment*

The plaintiff, Erin Young (formerly known as Erin C. Butler, hereinafter "Young"), and the debtor, Jeffrey S. But-

---

1. The memorandum decision rendered herein constitutes the Court's finding of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

ler (the "Debtor"), were married on December 19, 1976 and had two children, that is, June D.S. Butler born October 26, 1978 and Emily L. Butler born February 16, 1983 (the "Children"). Young and the Debtor separated in 1990 and, subsequently, filed for a no-fault divorce. On June 29, 1993, the Supreme Court of the State of New York, Westchester County, Ninth Judicial District (the "Westchester Supreme Court"), issued a judgment of divorce (the "Divorce Judgment") (Case Index No. 93–08979), which provided for the dissolution of the Debtor's and Young's marriage and incorporated by reference their separation agreement (the "Separation Agreement") dated May 1, 1993.[2]

## 2. *Separation Agreement*

As a no-fault divorce proceeding, an attorney mediator acted on behalf of both the Debtor and Young in having them reach an agreement on the terms of the Separation Agreement. The agreement obligated the Debtor to (1) pay spousal support and maintenance of $4,166.66 per month up until the earlier of Young's death or April 30, 2003, and (2) pay child support and maintenance of $1,833.33 per month, however, if an emancipation event occurred as to one of the Children, the child support payment would thereafter be $1,000.00 per month. In addition, the Debtor had to pay Young $490,000.00, that is, $20,000.00 within ten days of execution of the Separation Agreement and the balance of $470,000.00 on or before October 1, 2003.

Young, in turn, agreed under the Separation Agreement (1) to waive any right, title or interest in a marital property locat-

ed in Los Angeles, California (the "Los Angeles Residence") and (2) to transfer her interest in the couple's marital residence, that is, the Brookside Estate located in Rye, New York (the "Brookside Estate") to the Debtor, where such estate had a $7.8 million outstanding mortgage with Citibank as of the date of the agreement. Also, Young agreed that in the event the Debtor sold or otherwise disposed of the Brookside Estate, Young would not be entitled to any proceeds from such sale or disposition. The Debtor, however, agreed to indemnify Young for liabilities arising out of the Brookside Estate. In addition, the Debtor had purchased a house in early 1993 located in Armonk, New York (the "Armonk House") that he afterwards transferred title to Young, where she assumed a $400,000.00 mortgage on the house and moved into it with her Children later that year.

Annexed to the Separation Agreement is a financial data sheet (the "Financial Data Sheet") setting forth the parties' respective incomes, assets and liabilities. Both the Debtor and Young (1) represented that there were no significant income or assets other than those set forth in the Financial Data Sheet and that their liabilities, if any, were listed therein, and (2) acknowledged that each was aware that the other party entered into the Separation Agreement by relying on the truth and accuracy of representations made therein. The Financial Data Sheet specifically provided, *inter alia*, that the Debtor had (1) direct compensation of $120,000.00 in 1993, (2) listed only one publicly traded partnership, "Samson Energy," under Item 5 ("Stocks and Mutual Funds") of the "Assets" section of the sheet, and (3) potential federal

---

**2.** While the Divorce Judgment provides that the Separation Agreement was entered into between the parties on May 25, 1993, the Separation Agreement on record in this adversary proceeding and the same agreement filed with the Westchester Supreme Court on June 30, 1993, both reflect that the agreement was entered into by the parties on May 1, 1993.

and state income tax liabilities totaling approximately $3 million due on the gain from the sales of the Los Angeles Residence and the Brookside Estate.

Further, attached to the Separation Agreement is the Debtor's and Young's joint 1991 Internal Revenue Service ("IRS") Form 1040 (U.S. Individual Income Tax Return) (the "1991 Federal Tax Return"), which contains supplemental forms and schedules, including a 1991 IRS Form 8271 (Investor Reporting of Tax Shelter Registration Number) and Schedule K–1's, that is, IRS Form 1065 (Partner's Income, Credits, Deductions, Etc.) (the "1991 Schedule K–1's"). Both the 1991 IRS Form 8271 and the 1991 Schedule K–1's reflect that the Debtor had ownership interests in several tax shelters, including one of the attached 1991 Schedule K–1's disclosing that the Debtor owned 0.326667% of the capital of a real estate tax shelter partnership, entitled "Ambassador Real Estate Investors LP" ("Ambassador"). Part V of Schedule D (Capital Gains and Losses) to the 1991 Federal Tax Return noted a capital loss carryover from 1991 to 1992 of $2,647,539.00. Also attached to the Separation Agreement are a 1992 IRS Form 4868 (Application for Automatic Extension of Time To File U.S. Individual Income Tax Return) and New York State Department of Taxation and Finance's 1992 Form IT–370 (Application for Automatic Extension of Time to File for Individuals) (hereinafter both referred to

as the "1992 Extension Returns"), where both the Debtor and Young requested for an extension of time to file their federal and New York state income tax returns for the 1992 calendar year. IRS Form 4868 was prepared by a certified public accountant and is dated April 13, 1993, that is, approximately two weeks prior to the parties' execution of the Separation Agreement on May 1, 1993.[3]

### 3. *Modification Agreement*

After the Debtor failed to sell the Brookside Estate, he gave Citibank the deed to the home in lieu of foreclosure. Following the deeding of the Brookside Estate to Citibank, Young and the Debtor entered into an agreement (the "Modification Agreement," and together with the Separation Agreement, the "Marital Agreements") dated September 30, 1993, modifying the $490,000.00 indebtedness of the Separation Agreement. First, Young acknowledged receiving $100,000.00 of said indebtedness. In turn, the Debtor agreed to pay the balance of $390,000.00 with a seven percent (7%) interest rate per annum on the unpaid balance in 108 equal monthly payments of both principal and interest in the sum of $4,849.16 per month (the "Monthly Payments"). These monthly payments would begin on November 1, 1993 and on the first day of each month thereafter until said indebtedness has been paid in full. The parties reaffirmed all

---

**3.** While Young's Post–Trial Memorandum of Law filed on November 13, 2002 asserts that the Debtor's 1991 Federal Tax Return and 1992 Extension Returns are "not part of or incorporated into the Separation Agreement," the Debtor testified at the September 6, 2001 hearing for this adversary proceeding that (1) his ownership interest in the real estate tax shelter, Ambassador, was disclosed to Young at the time she entered into the Separation Agreement such that the Schedule K–1 for Ambassador was included as part of the Sepa-

ration Agreement. (Tr. p. 95–96). Since the Court gave Young's counsel the opportunity at the hearing to subsequently cross-examine the Debtor again and counsel declined (*see* Tr. p. 99), the Court finds that such IRS forms and corresponding schedules as well as 1992 Extension Returns are a "part" of the Separation Agreement. Nevertheless, this does not imply that such forms and schedules were incorporated into the Financial Data Sheet attested to by Young and the Debtor.

other terms and conditions of the Separation Agreement.

### 4. *Debtor's 1993 Federal Income Tax Return*

The Debtor's IRS Form 1040 (U.S. Individual Income Tax Return) for the 1993 calendar year (the "1993 Federal Tax Return") reflected, *inter alia*, that he had (1) earnings of $175,000.00, (2) taxable interest income of $62,951.00, (3) capital gain of $752,672.00 resulting from the sale of his partnership interest in Ambassador, (4) pensions and annuities of $65,845.00, and (5) other income in the form of a net operating loss ("NOL") carryforward of $2,776,444.00 for 1993. The 1993 Federal Tax Return also noted on Statement 29 (Federal Carryover Schedule) that there was a NOL carryover of $2,647,539.00 for the 1991 calendar year, which is equal to the $2,647,539.00 capital loss carryover under Part V of Schedule D (Capital Gains and Losses) to the 1991 Federal Tax Return.

### 5. *State Court Enforcement Proceedings*

Eventually, the Debtor failed to meet his obligations under the Divorce Judgment and the Marital Agreements. Young thereafter commenced several enforcement proceedings against the Debtor resulting in certain judgments being entered against the Debtor. First, pursuant to an order dated May 12, 1997, the Westchester Supreme Court awarded Young a money judgment in the amount of $113,539.01 (the "1997 Judgment"). This judgment consisted of $23,166.62 in maintenance arrears, $12,833.31 in child support arrears and $74,039.08 in equitable distribution arrears, all three which have accrued up to and including March 11, 1997, together with $3,500.00 in enforcement-related counsel fees, court costs and other expenses reasonably incurred by Young.

After certain enforcement matters filed in Westchester Family Court were transferred to the Family Court of the State of New York, County of New York (the "New York Family Court"), the New York Family Court determined that the Debtor failed to obey the Divorce Judgment and ordered on November 30, 1998 (the "1998 Judgment") that (1) a judgment be entered for Young in the amount of $71,000.00 in spousal and child support arrears (reflecting $1,000.00 paid during the period of December 1, 1997 to date), with costs and disbursements, for the period of December 1, 1997 through November 30, 1998, and (2) that support be payable through the Support Collection Unit at $6,000.00 per month, consisting of $4,166.67 spousal support and $1,833.33 child support.

Further, pursuant to an order of Westchester Supreme Court dated June 17, 1999, Young was awarded a money judgment against the Debtor in the amount of $52,370.09 plus interest at the rate of nine percent (9%) from August 20, 1998, consisting of $14,666.66 child support arrears and $33,328.00 maintenance arrears, both accruing for the period of April 1, 1997 through November 1, 1997, inclusive, and $4,375.45 in enforcement-related counsel fees.

On November 29, 1999, the New York Family Court issued a Stipulation and Order of Settlement and Discontinuance (the "1999 Stipulation and Order"), requiring the Debtor, *inter alia*, (1) to provide monthly and annual income statements, and (2) to pay for (a) maintenance and child support payments, (b) $30,000.00 in arrears, (c) medical expenses of his Children, and (d) Young's counsel fees. The 1999 Stipulation and Order provided, in pertinent part, that beginning on November 29, 1999 and continuing on the first of

each month thereafter through the later of February 28, 2004, or the completion of four years of college by the parties' daughter, the Debtor must pay in maintenance and child support a minimum sum of $1,000.00 per month, plus twenty-five percent (25%) of all of the Debtor's income in excess of $48,000.00 per year up to $288,000.00, where such total amount consists of twenty-five percent (25%) child support and seventy-five percent (75%) maintenance. Nevertheless, the 1999 Stipulation and Order did not limit Young's right to pursue all of her rights and remedies in another proceeding involving the Debtor, including but not limited to the Debtor's bankruptcy proceeding or actions pending in the Westchester Supreme Court.

## B. *Bankruptcy Proceedings*

### 1. *Debtor's Chapter 7 Petition*

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (that is, Case No. 97–B–47316) on November 4, 1997 (the "Petition Date"). On November 17, 1997, the Debtor filed a Notice of Commencement of Case, scheduling the section 341(a) meeting of creditors for December 4, 1997 and notifying interested parties that the deadline for filing a complaint to object to the Debtor's discharge or to determine dischargeability of certain debts was February 2, 1998. The deadline was later extended by Court order to April 2, 1998.

A Certificate of Mailing was filed with the Court on November 20, 1997, noting that the Notice was served by first class mail on such date to interested parties, including Young's attorney. Robert M. Fisher was also appointed successor trustee (the "Trustee") of the Debtor by notice issued by the United States Trustee on November 20, 1997. Shortly thereafter,

the Debtor filed his Summary of Schedules and Statement of Financial Affairs.

### 2. *Young's Proof Of Claim*

On February 27, 1998, Young filed a proof of claim numbered 6 in the Debtor's chapter 7 case as a secured claim in the amount of $113,539.01, that is, the amount awarded by the 1997 Judgment. Young later filed an amended proof of claim numbered 10 ("Amended Proof of Claim") on January 8, 1999 in the amount of $524,970.69, reasserting her $113,539.01 secured claim and adding a priority claim of $362,931.68, an *in rem* conversion claim of $42,100.00 and a general unsecured claim of $6,400.00.

In particular, the Amended Proof of Claim consisted of $27,499.97 in child support arrears (that is, $12,833.31 child support arrears as of March 11, 1997 per the 1997 Judgment and $14,666.66 child support arrears from April 1, 1997 through November 1, 1997), $56,494.62 in maintenance arrears (that is, $23,166.62 maintenance arrears as of March 11, 1997 per the 1997 Judgment and $33,328.00 maintenance arrears from April 1, 1997 through November 1, 1997), $348,994.20 in nontaxable payments (that is, $74,039.08 nontaxable payment arrears as of March 1, 1997 per the 1997 Judgment, $33,328.00 non-taxable payment arrears from April 1, 1997 through November 1, 1997, and $241,561.84 present value/post-petition payments), $43,481.90 in legal fees (that is, $3,500.00 legal fees as per the 1997 Judgment, $11,981.90 unpaid legal fees from May 12, 1997 through November 3, 1997, and $28,000.00 legal fees paid by Young), $42,100.00 in a conversion claim, and $6,400.00 in moving expenses.

### 3. *Adversary Proceedings*

Young subsequently commenced this adversary proceeding by filing a summons

and complaint (the "Complaint") against the Debtor on April 1, 1998, setting forth four claims for relief. The first claim asserts that, aside from the 1997 Judgment, additional maintenance, child support and equitable distribution arrears accrued, where all of these amounts were intended to be, and actually constitute, alimony and child support due to Young that are all nondischargeable debts under section 523(a)(5). In the alternative, the Complaint's first claim states that even if the part of the 1997 Judgment relating to equitable distribution arrears and the post–1997 Judgment amounts relating to additional equitable distribution arrears are in the nature of a property settlement, such debts are nevertheless nondischargeable under section 523(a)(15). Young argues that the debts are nondischargeable because the Debtor has the ability to make such equitable distribution payments following his bankruptcy and the detriment to Young in not receiving such payments outweighs any benefit to the Debtor that would result from discharging such obligations. The remaining claims for relief objected to the Debtor's discharge pursuant to subsections (a)(2) through (a)(4) of section 727. On May 8, 1998, the Debtor filed his answer (the "Answer") to the Complaint.

Robert T. Butler ("Robert Butler"), who is unrelated to the Debtor but was the Debtor's landlord, also initiated an adversary proceeding against the Debtor on April 1, 1998 (that is, Adv. Proc. No. 98–8323A). In this matter, Robert Butler (1) objected to the dischargeability of the Debtor's indebtedness to him pursuant to section 523(a)(6) and Bankruptcy Rule 7001(6) and (2) objected to the Debtor's general discharge pursuant to section 727(a)(2)(A)-(B) and Bankruptcy Rule 7001(4).

Also, in the Debtor's main chapter 7 case, Young filed a motion for relief from automatic stay on April 2, 1998 pursuant section 362(d)(1) so as to permit her to continue contempt and other enforcement proceedings against the Debtor pertaining to marital obligations and other alleged violations of law. In response, the Debtor filed an opposition to Young's motion on May 26, 1998. The Trustee did not enter an objection to Young's section 362(d)(1) motion.

After hearing arguments on Young's section 362(d)(1) motion on June 9, 1998, the Court issued an order on June 16, 1998 modifying the automatic stay to permit Young to (1) continue a certain proceeding commenced by her against the Debtor in the Westchester Supreme Court to obtain enforcement of a judgment for the 1997 Judgment and to obtain judgment against the Debtor for additional arrears, and (2) commence proceedings against the Debtor to register and enforce the 1997 Judgment against assets of the Debtor located in states other than New York, provided, however, that the enforcement of the New York Judgment and collection of child and spousal support obligations must be limited to property that is not property of the chapter 7 estate, including, but not limited to, exempt property and post-petition earnings of the Debtor.

On September 4, 1998, Robert Butler commenced a second adversary proceeding against the Debtor, the Trustee and Young filed on September 4, 1998 (that is, Adv. Proc. No. 98–9167A), seeking (1) a declaratory judgment that he was the owner of the items of personal property that were transferred to him by the Debtor pursuant to four bills of sale in partial satisfaction of various rent obligations the Debtor owed to him for leasing his townhouse from November 1993 to October 31, 1997, or in the alternative, (2) an order declaring he

had a perfected security interest in certain of said property pursuant to a collateral security agreement dated November 18, 1993. Young at the time asserted that she had an interest in the personal property by virtue of her pre-petition Divorce Judgment. The Trustee in turn claimed an interest in the property on the grounds that, *inter alia,* the transfers to Robert Butler exceeded his claims against the Debtor's bankruptcy estate.

Further, pursuant to sections 542, 548 and 549, the Trustee brought an adversary proceeding (that is, Adv. Proc. No. 99–8670A) on November 3, 1999 to recover property of the bankruptcy estate and to avoid fraudulent pre-petition and post-petition transfers made and received, absolutely or in trust, by the Debtor and his mother, Veneita S. Butler.

On May 10, 2000, the Court issued an order approving a negotiated stipulation and settlement between Young, Robert Butler and the Trustee, which resolved their competing claims to the personal property raised by Robert Butler's second adversary proceeding (that is, Adv. Proc. No. 98–9167A). This settlement provided, in part, that Robert Butler would pay $45,000.00 to Young and $35,000.00 to the bankruptcy estate. In exchange for these payments, (1) Robert Butler became the rightful owner of certain personal property, and (2) the Trustee assigned to Robert Butler all of the Trustee's rights, title and interest in certain other personal property, if any, of the Debtor, including property that was transferred to third parties. The settlement further provided that the Trustee must assign to Robert Butler all of the Trustee's rights, title and interest, if any, in and to claims, causes of action and property that were subject of the fraudulent conveyance action brought by the Trustee on November 3, 1999 (that is, Adv. Proc. No. 99–8670A). Furthermore, any recovery from the fraudulent conveyance action will be shared, ten percent (10%) (to a maximum of $5,000.00) to Young, five percent (5%) (to a maximum of $2,500.00, after expenses) to the bankruptcy estate and the remaining balance to Robert Butler. In addition, Young and Robert Butler both agreed to release and surrender their claims against the bankruptcy estate, however, reserved all of their rights and claims against the Debtor, including their respective complaints objecting to the Debtor's discharge.

Pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, made applicable to the four adversary proceedings referenced herein under Bankruptcy Rule 7016, the Court issued an Amended Joint Combined Pretrial Order (the "Pretrial Order") on July 10, 2001. The Pretrial Order outlined the nature of the actions, stipulated and alleged facts, parties' contentions and issued to be tried, all of which would control the subsequent course of the adversary proceedings.

### 4. *Hearings And Post–Trial Matters*

The Court held several hearings in this adversary proceeding (collectively, the "Hearings") on August 2, 2001 and September 5 and 6, 2001. Pursuant to Rule 15(b), Young's counsel moved to amend the pleadings to conform to the evidence (the "Rule 15(b) Motion") introduced at the Hearings in order to argue that Young's claims are nondischargeable pursuant section 523(a)(2)(B) based on the Debtor's alleged false Financial Data Sheet. In particular, the amendment concerned alleged discrepancies between Debtor's 1993 Federal Tax Return and the Financial Data Sheet.

On November 13, 2002, Young filed (1) a Memorandum of Law in Support of her Rule 15(b) Motion, and (2) Post–Trial Memorandum of Law (the "Post–Trial

Memorandum") seeking nondischargeability of her claims for alleged spousal, child and housing support based on sections 523(a)(2)(B), (a)(5) and (a)(15). In turn, the Debtor filed a Reply in Opposition to Young's Rule 15(b) Motion and a Reply to Young's Post–Trial Memorandum on January 10, 2003. Young thereafter filed a Reply to the Debtor's Opposition to her Rule 15(b) Motion on January 23, 2003, asserting at the end of her Reply that if her Rule 15(b) Motion is not granted, the Court should consider the evidence offered to bar the Debtor's discharge pursuant to sections 727(a)(2), (a)(3) and (a)(4).

The Court issued a final order and judgment on December 20, 2002 in three of the related adversary proceedings (that is, Adv. Proc. Nos. 98–8323A, 98–9167A and 99–8670A) based on prior stipulations of settlement among the parties. The order provided, *inter alia,* that (1) certain judgments be entered against the Debtor in favor of Robert Butler for certain amounts, (2) all such judgments be excepted from the Debtor's discharge pursuant to sections 523(a)(2), (4) and (6) and otherwise, (3) the Debtor transfer, convey and deliver certain property to Robert Butler, and (4) certain amounts be shared between Robert Butler, Young and the Trustee for recovery of the fraudulent conveyance action initially brought by the Trustee and later assigned to Robert Butler.[4] While the order did not specifically address Robert Butler's section 727(a) cause of action, all of his causes of action in the various adversary proceedings were dismissed with prejudice.

The Trustee filed a motion on October 1, 2003 to reclassify and expunge Young's initial and amended proofs of claim based on the Court's May 10, 2000 order approving the settlement where Young and Robert Butler's released their claims against the bankruptcy estate. After a hearing on November 5, 2003 with no party objecting or appearing in opposition to the motion, the Court ordered on the same date that such claims be reclassified and disallowed as against the bankruptcy estate and that the claims be expunged.

### III.   Contentions

#### A.   *Young's Contentions*

##### 1.   *Procedural Assertions*

In moving to amend her pleadings to conform to evidence of the alleged discrepancies between the Debtor's 1993 Federal Tax Return and the Financial Data Sheet, Young notes that both were introduced at the September 6, 2001 Hearing without objection by the Debtor's counsel and where the Debtor testified that both are true and correct. Young also notes that the Debtor was examined on the discrepancies by his counsel, all without objection as to relevance or timeliness, without claims of prejudice, and without any request for a continuance or an opportunity to present evidence to contradict alleged fraud exposed by the 1993 Federal Tax Return. Young argues that since the Debtor failed object to the introduction of such evidence and he had an opportunity to be cross-examined by his counsel on the discrepancies, the Debtor impliedly consented to litigate the unpleaded issue of nondischargeability of her claims pursuant to section 523(a)(2)(B) based on the alleged false Financial Data Sheet.

Young acknowledges that Bankruptcy Rule 4007(c) provides that an action generally must be raised by a complaint within 60 days after the first date set for the

---

4.   Accordingly, Young's $42,100 conversion claim of her Amended Proof of Claim is no longer at issue.

section 341(a) meeting of creditors. While recognizing that her section 523(a)(2)(B) nondischargeability action can be time-barred pursuant to Bankruptcy Rule 4007(c), Young argues that the Debtor impliedly consented under Rule 15(b) to litigate the unpleaded issue of nondischargeability of her claims pursuant section 523(a)(2)(B). Young asserts that the Debtor was fairly apprised that the evidence of alleged discrepancies between the 1993 Federal Tax Return and Financial Data Sheet went to the unpleaded issue.

Young further asserts that upon review of the Complaint, the Debtor was on notice of the general wrong or misconduct to which her amendment pertains. Specifically, Young contends that the Complaint makes allegations (1) concerning unpaid maintenance, child support and distributions which arose out of a Separation Agreement predicated on the Debtor's false Financial Data Sheet, and (2) concerning the Debtor's intent to hinder, delay or defraud her by, *inter alia*, concealing property, financial interests, business transactions and his financial condition. Without directly citing Rule 15(c), Young argues that since her Complaint adequately identified the factual circumstances from which the proposed amended pleading arose, the amendment relates back to the Complaint and, therefore, is not time-barred. Moreover, Young maintains that equity and justice compel the amendment to be allowed.

Young also contends that even if the § 523(a)(2)(B) issue was not raised in the Pretrial Order, any restriction contained in such order was for all practical purposes waived by the Debtor for not objecting to the introduction of the evidence of alleged discrepancies between the 1993 Federal Tax Return and Financial Data Sheet and for having the opportunity to be cross-examined by Debtor's counsel in connection with such evidence. Moreover, Young argues that the Pretrial Order may be amended to prevent a manifest injustice.

### 2. *Nondischargeability Pursuant To Section 523(a)(2)(B)*

Young contends that if the Court were to grant her Rule 15(b) Motion, it would find that her claims against the Debtor are nondischargeable pursuant to section 523(a)(2)(B) because the Debtor used a statement in writing (that is, the sworn Financial Data Sheet), (1) that is materially false by omitting certain information, (2) respecting the Debtor's financial condition, (3) on which Young, to whom the Debtor is liable for money, reasonably relied, and (4) which the Debtor caused to be made or published with intent to deceive.

Young explains that the Financial Data Sheet, sworn to its truth and accuracy by the Debtor, was materially false because it omitted (1) the Ambassador asset worth at least $752,672.00 as reflected on the 1993 Federal Tax Return, (2) $936,468.00 in income,[5] and (3) $2,776,444.00 valuable tax loss carryforward, which would have eliminated any tax on the Debtor's claim on the Financial Data Sheet that he faced approximately $3 million in potential income taxes from gain on the sales of the Los Angeles Residence and the Brookside Estate. Young maintains the Financial Data Sheet painted a substantially untruthful picture of the Debtor's financial condition by misrepresenting information upon which Young reasonably relied in extending credit to the Debtor in connection with the

---

**5.** This $936,468.00 amount consisted of (1) $752,672.00 of capital gains, (2) $55,000.00 of additional earnings ($175,000.00 reported on the 1993 Federal Tax Return less $120,000.00 reported on the Financial Data Sheet), (3) $62,951.00 of interest income, and (4) $65,645.00 of pension income.

Separation Agreement and indirectly with the Modification Agreement. Further, Young contends the Financial Data Sheet was made by the Debtor with the intent to deceive and was either knowingly false or made so recklessly as to warrant a finding that Butler acted fraudulently. Young also notes that the 1992 Extension Returns were completed two weeks prior to the execution of the Separation Agreement as well as the attestation of the truthfulness and accuracy of the Financial Data Sheet, suggesting the Debtor purposefully hid his true income and assets, presumably by delaying the filing of his 1992 federal and state tax returns.

Young maintains that (1) since all of her claims against the Debtor are predicated on materially false writings concerning the Debtor's financial condition made by the Debtor with intent to deceive her and (2) because she reasonably relied on such false information in entering into the Marital Agreements, all of her claims against the Debtor are nondischargeable pursuant to section 523(a)(2)(B).

### 3. Nondischargeability Pursuant To Section 523(a)(5)

Young asserts that the total $390,000.00 of Monthly Payments payable by the Debtor to Young under the Modification Agreement is not a property settlement in the form of an equitable distribution. Rather, Young contends that the Monthly Payments were actually housing support for her and the Children when they moved into the Armonk House in 1993.

Young contends that a bankruptcy court is not bound by any label given to a debt in the parties' agreement or in a court order; rather, the court must look behind any label in determining the true nature of an obligation. Young thereby asserts that the Debtor's claim that the Monthly Payments were in the nature of equitable dis-

tribution of property based on labels in the Separation Agreement is not dispositive because the payments were in fact for housing support. Young notes that the Modification Agreement did not characterize the Monthly Payments as an equitable distribution of property and, indeed, the Debtor testified at the Hearings that he agreed to spread out the payments on a monthly basis based on his income and, thus, is hardly a property distribution.

Young also asserts that in evaluating the intentions of the parties as to the nature of an obligation, bankruptcy courts have considered the parties' financial condition when they entered into their agreement or when the state court entered its order fixing the obligation. Young claims that if a court determines that the obligee spouse or former spouse would have had difficulty in providing for himself or herself and the parties' children, as in the case at bar, it is likely the obligation will be determined to be in the nature of alimony, maintenance or support and, thus, nondischargeable irrespective of how the obligation is labeled.

Young notes that her total costs of maintaining the Armonk House and supporting herself and the Children was $10,812.00 per month, which is approximately $4,823.00 per month in excess of the Debtor's maintenance and child support obligations under the Separation Agreement. The $4,823.00 differential represented the amount necessary to pay the mortgage and taxes on the Armonk House and it was approximately equal to the Monthly Payment amount of $4,849.16. Young further notes that at the time she executed the Marital Agreements, she had no income, was unemployed and her education was limited to graduation from high school.

Young asserts that courts have determined that a long-term obligation to make regular monthly payments is more characteristic of support. Also, Young asserts

that courts have found that the source of the payment obligation does not conclusively determine the nature of the obligation, and if the payment is necessary for the support of the obligee, a bankruptcy court may determine the debt to be non-dischargeable. Young notes that the Monthly Payments were long-term obligations and necessary for housing support for herself and the Children and, thereby, should be deemed nondischargeable.

In addition, Young asserts that courts have held that an obligation that terminates on the emancipation event of the parties' children is likely to have been intended for support. Young points out that the Monthly Payments under the Modification Agreement were scheduled to end on October 1, 2003 more or less coincident to the one of the Children's twenty-first birthday, which is an emancipation event under the Separation Agreement.

Moreover, Young maintains that if an obligation is judicially modifiable or enforceable by contempt-of-court remedies, it is more likely that a court will determine that the obligation is in the nature of alimony, maintenance or support. Young notes that Article M of the Separation Agreement provides for judicially enforceable remedies in the event of default in obligations under the Separation Agreement.

Young further contends that in applying section 523(a)(5), some courts have considered the tax treatment given to marital obligations under the Internal Revenue Code, since both the Bankruptcy Code and the Internal Revenue Code attempt to distinguish obligations in the nature of alimony, maintenance or support from property division obligations. Young notes that while the Bankruptcy Code and the Internal Revenue Code have different purposes, tax treatment by itself should not be dispositive of dischargeability under section

523(a)(5); courts can look to the tax treatment given to the obligation in conjunction with other factors discussed above. Young further asserts that such an analysis is meaningless in view of the Debtor's tax loss carryforwards enumerated in his 1993 Federal Tax Return, which virtually exempted him from the tax consequences relating to his obligations under the terms of the Separation Agreement.

### 4. Nondischargeability Pursuant To Section 523(a)(15)

Young argues that to the extent the Court does not grant relief under sections 523(a)(2)(B) and 523(a)(5), her claims against the Debtor are nevertheless non-dischargeable pursuant to section 523(a)(15)(B) because the benefit of discharging her claims against the Debtor is outweighed by the detrimental consequences to her. Specifically, Young asserts that while the Debtor is a successful and highly educated businessman who has a very high income potential in the future, in contrast she is unmarried, unemployed, unemployable, and unable to support herself and the Children without the Debtor's support. Young notes, *inter alia*, that the Debtor's defaults and reduced payments of spousal, child and housing support have had devastating effects on her and the Children where she has been forced to borrow on certain life insurance policies on the Debtor's life, mortgage and re-mortgage her home and sell most of her furs, jewelry and antiques. Young thereby urges that under these circumstances her claims against the Debtor should be deemed nondischargeable.

### 5. Reimbursement Of Attorney Fees

Young contends that she incurred $100,000.00 in legal fees to enforce her rights under the Separation Agreement and the Modification Agreement up to and

including the Petition Date [6] and $45,000.00 in legal fees to initiate this adversary proceeding. Young argues that (1) because the Debtor is obligated under the Separation Agreement to pay legal fees incurred by her to enforce the Debtor's obligations under the Marital Agreements and (2) since her legal fees were in fact incurred in the enforcement of the Debtor's nondischargeable support obligations, such fees are considered nondischargeable debt under section 523(a)(5) and, thus, should be excepted from the Debtor's discharge.

### 6. *Denial Of Debtor's Discharge Pursuant To Section 727(a)*

Young expressly objected to Debtor's discharge pursuant to section 727(a) in her Complaint. She did not raise her section 727 objection, however, at the Hearings or in her Post Trial Memorandum. Young only raised her section 727 objection as an alternative request for relief in a final post-trial reply pleading to the Debtor's Memorandum of Law in Opposition to her Rule 15(b) Motion. In that reply brief, she asserts that although the thrust of her claims are related to nondischargeability of the Debtor's indebtedness to her, the very same evidence supports a finding denying the Debtor's discharge pursuant to section 727(a). She further asserts that such a discharge should be denied based on the fact, *inter alia,* that the Debtor concealed and falsified records from which his financial condition or business transactions might be ascertained, and that he knowingly and fraudulently made a false oath and failed to satisfactorily explain the loss of his assets to meet his liabilities.

### B. *Debtor's Contentions*

#### 1. *Young's Rule 15(b) Motion Should Be Denied*

While recognizing that Rule 15(b) permits an amendment to conform to the evidence when issues not raised by the parties' pleadings are tried their by express or implied consent, the Debtor asserts that neither express nor implied consent was given to Young to try the section 523(a)(2)(B) issues relating to the alleged false Financial Data Sheet.

As to express consent, the Debtor notes that Young failed to broach the issues relating to the Financial Data Sheet in the Pretrial Order or conference. Rather the Debtor was taken by surprise by the Rule 15(b) Motion because Young waited until the end of the Hearings to raise these issues and, had he been aware of these issues earlier, he would have submitted evidence to rebut Young's contentions. The Debtor, therefore, argues that there was no express consent.

The Debtor further notes that the issue of implied consent by a party opposing a motion to amend pleadings to conform to the evidence at trial depends on whether the opposing party recognized that the issue had entered the case at trial. Further, contrary to Young's assertions, the Debtor contends that failure to object to evidence that is relevant to both pleaded and unpleaded issues does not imply consent to try the unpleaded issue. The Debtor notes that he was unaware that the issues relating to section 523(a)(2)(B) dischargeability and the Financial Data Sheet had entered this case at the Hearings and, in fact, only became aware that Young believed the Financial Data Sheet to not only be false but to be the foundation of

**6.** Young also notes that her Amended Proof of Claim reflects a claim of $43,481.40 that she incurred in legal fees prior to the Petition Date in connection with the enforcement of her rights under the Separation and Modification Agreement.

her claims against the Debtor upon service of the post-trial memorandum in support of her Rule 15(b) Motion.

The Debtor also argues that he would be severely prejudiced by a Rule 15(b) amendment of the pleadings at this juncture in the case. The Debtor notes that Young had over four years since the filing of her Complaint to broach these issues with the parties and the Court, but failed to raise them. The Debtor also notes that he had no opportunity to defend on the section 523(a)(2)(B) dischargeability issues at the Hearings because any evidence relating to such issues were slid into the Hearings by Young's counsel.

### 2. *Bankruptcy Rule 4007(c) Bars Young's Section 523(a)(2)(B) Action*

The Debtor asserts that Young's attempt to add the section 523(a)(2)(B) cause of action based upon the alleged false Financial Data Sheet is time-barred pursuant to Bankruptcy Rule 4007(c) because a complaint seeking such a nondischargeability of debts was not filed within the 60–day statute of limitations set forth in the rule; rather, Young raises her action over four years after the first section 341(a) meeting of creditors. Further, since Young admits in her post-trial memoranda that all of her claims against the Debtor are predicated upon the alleged Financial Data Sheet, the Debtor argues that, without the alleged false Financial Data Sheet, Young has no claims against the Debtor. The Debtor also contends that because Young's section 523(a)(2)(B) action concerning the false Financial Data Sheet states an entirely new set of facts neither averred in the Complaint nor contemplated in the Pretrial Order, there is no relation back to the original pleadings.

### 3. *Young's Rule 15(b) Motion Fails Because Not Raised In Pretrial Order*

The Debtor argues that Young's section 523(a)(2)(B) claims of nondischargeability of the Debtor's debts to her based on his supposedly false Financial Data Sheet are further barred because these issues were not raised in the Pretrial Order. The Debtor thereby argues that Young waived all issues pertaining to the Financial Data Sheet. As previously referenced above, the Debtor asserts that since all of Young's claims against him are predicated upon the Debtor's alleged false Financial Data Sheet and because Young has not specified any manifest injustice that would result by excluding such evidence, Young's claims must be dismissed in their entirety.

### 4. *Monthly Payments Are Dischargeable Equitable Distribution Payments*

The Debtor contends that Young has failed to establish that the Monthly Payments under the Modification Agreement are nondischargeable pursuant to section 523(a)(5) on the grounds that such obligations are in the form of support. To the contrary, the Debtor argues that such obligations are a property settlement in the form of equitable distribution payments, which are dischargeable in bankruptcy.

Contrary to Young's characterization of the Monthly Payments as housing support, the Debtor notes that Young specifically states in paragraph 7 of her Complaint that "[s]hortly after the entry of the Divorce Judgment, the Plaintiff and the Debtor executed a certain Modification Agreement … pursuant to which the Debtor was obligated to make equitable distribution payments to Plaintiff in 108 equal monthly installments of $4,849.16." The Debtor also notes that paragraph 8 of the Complaint alleges that "[p]rior to the

commencement of the [c]hapter 7 case, the Debtor failed to make both the support and equitable distribution payments as required under the Separation Agreement, as modified, and the Divorce Judgment."

Moreover, the Debtor argues that the intent of the parties in this case was to establish equitable distribution payments in their Marital Agreements for settlement of their marital residence, that is, the Brookside Estate. The Debtor notes that the entire $490,000.00 payment under the Separation Agreement, which required him to pay $20,000.00 upon execution of the agreement and the balance on or before October 1, 1993, was intended to be approximately half of the $1 million net proceeds he expected to receive from the sale of the Brookside Estate. The Debtor explains that after he failed to sell the residence, he had no other option but to give Citibank the deed to the home in lieu of foreclosure. Further, the Debtor clarifies that he only entered into the Modification Agreement after he could not sell the residence. He also states that the 108 Monthly Payments set forth in the agreement only changed the timing of the payments, but not the character of the amount due, which were solely intended to be equitable distribution payments.

### 5. *Section 523(a) Mandates Discharge Of Debtor's Alleged Debts*

Citing *Foto v. Foto (In re Foto),* 258 B.R. 567 (Bankr.S.D.N.Y.2000), the Debtor notes that once a creditor has made the required showing that a debt falls within section 523(a)(15)'s exception to discharge for divorce-related debts not in the nature of support, the burden shifts to the debtor to demonstrate that the debt should nonetheless be discharged either upon the ground (1) that he does not have an ability to pay it or (2) that the benefit to the debtor of discharging the debt outweighs

the detriment to the creditor. The Debtor, however, thereafter argues that even if the Court were to find that the equitable distribution payments pursuant to the Separation Agreement and the Modification Agreement are in the nature of support, he nevertheless should be discharged from having to pay Young any amounts claimed because the parties are in vastly different financial predicaments. In particular, the Debtor maintains that under the Separation Agreement he transferred to Young all of his family's unencumbered assets, totaling approximately $5 million while he assumed approximately $10 million in personal liabilities. The Debtor asserts that he has no post-petition assets and that all of his pre-petition assets are now part of his bankruptcy estate. Further, the Debtor claims that he has paid, in good faith, everything he is financially able to by liquidating his 401(k) and IRA accounts, borrowing cash from family and friends, and drawing money against his credit cards and, thus, has no ability to raise additional funds. The Debtor also contends that he has faced hardships during these proceedings and thereby to encumber him with amounts claimed by Young would not allow him to obtain a fresh start.

### 6. *Young Not Entitled To Legal Fees*

The Debtor argues that Young frivolously prosecuted this action and every other post-divorce proceeding in several jurisdictions. Moreover, the Debtor claims that the mere fact that legal fees incurred in litigation to obtain or enforce a support award is not by itself, sufficient to make it nondischargeable; rather, such fees must constitute support, which is not the case here. The Debtor asserts that the "support" Young claims as alimony and maintenance was contemplated by the Marital Agreements as being equitable distribution payments. The Debtor further maintains that he has provided Young with all the

support she might ever need, that is, over $5 million in assets, while he has nothing. Under these circumstances, the Debtor argues that Young is not entitled to legal fees.

## IV. Discussion

### A. *Abandonment Of Young's Objection To Debtor's Discharge Under Section 727*

■ Section 727(a) provides that a bankruptcy court must grant a chapter 7 debtor an order discharging his or her debts unless one of the ten disqualifying grounds enumerated within the section is proven to exist. A discharge granted under section 727(a) generally releases the debtor from personal liability for all debts, other than those debts deemed nondischargeable under section 523. 11 U.S.C. § 727(b).

A creditor may object to the debtor's discharge under section 727(a). 11 U.S.C. § 727(c). Bankruptcy Rule 4004(a) provides that "a complaint objecting to the debtors discharge under [section] 727(a) of the [Bankruptcy] Code shall be filed no later than 60 days after the first date set for the meeting of creditors." *See generally Kontrick v. Ryan,* —— U.S. ——, 124 S.Ct. 906, 910–12, 157 L.Ed.2d 867 (2004) (discussing section 727's statutory framework).

■ While a section 727 objection to discharge may be timely raised by a creditor in his or her complaint, as was the case here where Young objected to Debtor's discharge under sections 727(a)(2), (3) and (4) in several claims for relief in her Complaint, a pretrial order will nevertheless supersede such a pleading. In particular, Rule 16(e) of the Federal Rules of Civil Procedure ("Rule 16(e)"), made applicable in this adversary proceeding under Bankruptcy Rule 7016, provides that a pretrial order "shall control the subsequent course of action unless modified by a subsequent order ... only to prevent manifest injustice." Under Rule 16(e), "[i]t is an established procedural principle that a party's failure to include a legal theory or defense in the pre-trial order results in its subsequent abandonment or waiver." *Katt v. City of New York,* 151 F.Supp.2d 313, 346 (2001) (internal quotation marks and citation omitted). Moreover, "finding a waiver pursuant to Rule 16(e) is particularly appropriate where ... a party knew or should have known an issue that might arise at trial, yet failed to raise the issue *either* in a pretrial order *or* at the final pretrial conference." *Id.* "The policies underlying Rule 16(e) include minimizing surprise and prejudice to a party at trial and promoting the efficient adjudication in a case." *Grossman v. Quentin Medical Laboratory, Inc.,* 1995 WL 728429, at *1 (E.D.N.Y.1995) (citing *Lamborn v. Dittmer,* 873 F.2d 522, 527 (2d Cir.1989)).

In the instant matter, Young sought relief under section 727(a)(2), (3) and (4) in her Complaint and although she did not specifically seek such relief in the Pretrial Order, she indirectly referenced section 727(a) relief in three non-relief sections of that order.[7] Accordingly, the Court finds

---

7. First, under the Pretrial Order section entitled "Young's Objection to Discharge Action," Young objects to the Debtor's discharge based on, *inter alia,* "his failure to keep and preserve books and records" and "his failure to list interests in various limited partnerships on his bankruptcy schedules." Immediately after this objection, Young seeks relief, in the alternative, for "an order declaring all of marital debts and obligations owed by the Debtor to her non-dischargeable pursuant to 11 U.S.C. § 523(a)(5) and (a)(15)." Second, under the "Erin Young's Contentions" section of the Pretrial Order, it states that "[i]n addition to the evidence adduced by Robert Butler, the evidence will also show that the Debtor failed to maintain and preserve books and records and omitted material assets from the

that Young preserved her section 727(a)(2), (3) and (4) actions in the Pretrial Order. Nevertheless, the Court finds that Young subsequently abandoned her section 727 actions by failing to address them at the Hearings or in her Post–Trial Memorandum and by only referring to the issue as an alternative relief in response to the Debtor's objection to Young's Rule 15(b) Motion. During the Hearings, the Debtor's counsel twice clarified with the Court that nondischargeability of certain debts of the Debtor under sections 523(a)(5) and 523(a)(15) were the only issues remaining for Young's adversary proceeding and that discharge of the Debtor under section 727 was no longer at issue.[8] Young's counsel, who was present at the Hearings, did not object to the Debtor counsel's statements clarifying the remaining issues in dispute. Further, Young's Post–Trial Memorandum does not raise the section 727 objection to the Debtor's discharge. Rather, the memorandum focuses on relief under sections 523(a)(5) and (a)(15).

Furthermore, Young raises the section 727 objection to discharge as an alternative request for relief, without any argument or discussion, in a final post-trial reply brief to the Debtor's Memorandum of Law in Opposition to her Rule 15(b) Motion. The reply brief was filed on January 23, 2003, that is, after Robert Butler settled his disputes with the Debtor on September 30, 2002, where such settlement was approved by Court order on December 20, 2002. Since Robert Butler settled his disputes with the Debtor includ-

ing his section 727 objection to the Debtor's discharge, it must have been clear to Young that if she wanted to pursue such an objection she needed to take appropriate steps to do so. Young, however, failed to do so and remained silent for several months until she filed her post-trial reply brief seeking a determination in her favor under section 727 in the context of an alternative relief request if her other causes of action are denied. The Debtor, therefore, had no notice that Young would even pursue the section 727 action after the settlement with Robert Butler, until the filing of her last post-trial pleading. Accordingly, the Court finds that allowing Young to raise a section 727 action at this late stage of the case, after not raising it during the Hearings and in her initial Post–Trial Memorandum, would severely prejudice the Debtor.

## B. *Certain Debts And Legal Fees Are Nondischargeable Under Section 523(a)(5)*

█ Section 523 defines a number of exceptions to the general grant of discharge provided by Bankruptcy Code section 727. Among these exceptions, section 523(a)(5) provides, in pertinent part, that:

> "a discharge under section 727 ... does not discharge an individual debtor from any debt ... to a spouse, former spouse or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a

---

Debtor's schedules mandating denial of his discharge." Moreover, the "Issues to Be Tried" section of the Pretrial Order specifically raises "[w]hether [the Debtor's] actions as set forth above and as proved at trial, warrant the denial of his discharge generally under Section 727(a)...."

**8.** At the Hearings, the Debtor's counsel, Mr. Ochs, stated as follows: (1) "Judge, I think it

should be clear that's in form the finalization of the 727 causes of action and the 523 causes of action, so that all that remains at this point are the 523(a)(5) and (a)(15) causes of action of Erin Young" (9/5/01 Tr. p. 8); and (2) "Mr. Taub is going to take Mr. Butler, given the fact that the testimony we are down to relates to the 523 issues and the 727 issues are now [sic] at issue" (9/6/01 Tr. p. 29).

separation agreement, divorce decree or other order of a court of record...."

11 U.S.C. § 523(a)(5). "This section of the Bankruptcy Code codifies the concerns that Congress has in protecting former spouses of debtors and their offspring, and reflect a public policy which favors the enforcement of family obligations." *Jones v. Herbert (In re Herbert)*, 304 B.R. 67, 77 (Bankr.E.D.N.Y.2004) (citing *Falk & Siemer, LLP v. Maddigan (In re Maddigan)*, 312 F.3d 589, 596 (2d Cir.2002)). Moreover, "[t]hese concerns are a counterbalance to the general goal of providing a fresh start to debtors, free from the burden of their debts." *Id.*

Since section 523(a)(5) unambiguously provides that alimony, maintenance and support are nondischargeable and there is no request for the Court to consider whether any of the amounts at issue should be reclassified as a property settlement, the Court finds that all of the Debtor's outstanding spousal, maintenance and child support obligations plus interest due to Young are nondischargeable under the section. The remaining inquiry under the section is whether the Debtor's Monthly Payments to Young and Young's legal fees in dispute are in the nature of alimony, maintenance or support, rather than a property settlement or associated with the property settlement and thereby similarly nondischargeable.

"Whether a payment is alimony, maintenance or support within the meaning of section 523(a)(5) is a question of federal bankruptcy law, not state law," *Brody v. Brody (In re Brody)*, 3 F.3d 35, 39 (2d Cir.1993), and any label or characterization given to a payment by a state court or by the parties is not, by itself, dispositive. *See Kerzner v. Kerzner (In re Kerzner)*, 250 B.R. 487, 491 (Bankr. S.D.N.Y.2000); *Bonheur v. Bonheur (In re Bonheur)*, 148 B.R. 379, 382 (Bankr. E.D.N.Y.1992). Under federal bankruptcy law, in determining whether a payment pursuant to a separation agreement is nondischargeable alimony, support or maintenance pursuant to section 523(a)(5), a bankruptcy court must look at the intent of the parties at the time the separation agreement was executed and the substance of the payment.[9] *See Brody*, 3 F.3d at 38; *Freyer v. Freyer (In re Freyer)*, 71 B.R. 912, 916 (Bankr.S.D.N.Y.1987). "'If the intent is not explicitly expressed, the bankruptcy court must attempt to infer the intent by examining the underlying facts of the case.'" *Sculler v. Rosen (In re Rosen)*, 232 B.R. 284, 291 (Bankr.E.D.N.Y. 1999) (quoting *Collier on Bankruptcy*, ¶ 523.11[6] (15th ed. rev.1996)).

---

9. Paragraph 523.11[6] of *Collier on Bankruptcy* (15th ed. rev.2003) clarifies as follows:

    [W]hen the debt arises from a negotiated separation agreement, the parties often focused on the state law implications of their agreement, not how the obligation would be characterized in a bankruptcy case. Thus, the bankruptcy court's retrospective inquiry is into the intentions of the parties with respect to an issue that they may not have fully considered.

    . . . .

    State law generally recognizes that the issues of property division and support are inextricably intertwined. State law governing support and division of property takes into account comparable factors—primarily the financial resources and needs of the parties. Similarly, separation agreements often treat support and property division as somewhat interchangeable. A spouse who receives more property may need less support. An obligation denominated as a property settlement may be essential to the support of the recipient of the property. Conversely, an obligation denominated as alimony may be a substitute for property that the obligee would otherwise have received. . . .

■ Courts have established several flexible factors "in determining the intent of a particular award in a divorce decree or separation agreement including an award of attorneys fees." *Id.* These factors include: (1) the characterization given to the award by the divorce decree and the context in which the disputed provisions appear; (2) whether there are children from the marriage; (3) the income and needs between the parties at the time the obligations became fixed by the divorce decision; (4) the ability of the nondebtor former spouse to obtain gainful employment; (5) the relative earning power of the parties; (6) whether an assumption of a debt has the effect of providing the support necessary to insure that the daily needs of the former spouse and any children of the marriage are met; (7) whether an assumption of debt has the effect of providing the support necessary to insure a home for the spouse and minor children; (8) whether a traditional support award would have been adequate in the absence of the obligation in question; (9) whether the obligation terminates on obligee's death or remarriage, or on an emancipation event of the children; (10) whether the obligation is payable in a lump sum or in installments over a period of time; and (11) whether there was a division of property and a division of the debts relating to the property. *See generally id.; Herbert,* 304 B.R. at 77; *Kerzner,* 250 B.R. at 492; *Cook v. Bieluch (In re Bieluch, Jr.),* 219 B.R. 14, 20 (Bankr.D.Conn.1998); *Friedman v. Silberfein (In re Silberfein),* 138 B.R. 778, 780 (Bankr.S.D.N.Y.1992); *Vittorini v. Vittorini (In re Vittorini),* 136 B.R. 632, 635 (Bankr.S.D.N.Y.1992); *Tsanos v. Bell (In re Bell),* 47 B.R. 284, 287 (Bankr. E.D.N.Y.1985) (all enumeration factors to consider in distinguishing alimony, maintenance, and support claims from settlement claims); *Collier on Bankruptcy,* ¶ 523.11[6] (15th ed. rev.2003) (summarizing many court-developed factors).

■ While courts have looked at a variety of factors in seeking to ascertain the mutual intent of parties at the time of the execution of their separation agreement, the Second Circuit has noted that no list of factors is necessarily exclusive. *See Brody,* 3 F.3d at 38. Rather, "[a]ll evidence, direct or circumstantial, which tends to illuminate the parties' subjective intent is relevant." *Id.*

■ The nondebtor spouse opposing the discharge of a particular debt has the burden of proof in establishing by the preponderance of the evidence that such a debt is nondischargeable pursuant to section 523(a)(5) on the ground that it is actually in the nature of alimony, maintenance or support. *See Kerzner,* 250 B.R. at 491–92; *Silberfein,* 138 B.R. at 780. The Court finds that Young has carried her burden of proving that the Monthly Payments and certain legal fees are nondischargeable pursuant to section 523(a)(5).

At the time the parties entered into the Separation Agreement on May 1, 1993, the Debtor was obligated to begin paying Young (1) $4,166.66 per month in spousal support, (2) $1,833.33 per month for child support, and (3) $490,000.00, where $20,000.00 would be paid within ten days of execution of the agreement and the remainder on or before October 1, 2003. During that same year, Young also obtained title to the Armonk House from the Debtor and assumed the mortgage on the house of approximately $400,000.00. Also, prior to the Modification Agreement, the undisputed facts show that the parties expected approximately $1 million net proceeds from the sale of the Brookside Estate in 1993, where $490,000.00 of the net proceeds would be allocated to Young as her share from the sale of the estate. The

Debtor, however, failed to sell the estate and, instead, was forced to give Citibank the deed to the estate in lieu of foreclosure by Citibank based on its outstanding mortgage. Afterwards, the parties entered into the Modification Agreement on October 1, 2003 modifying the $490,000.00 indebtedness of the Separation Agreement, where Young acknowledged receiving $100,000.00 of said indebtedness and the Debtor agreed to pay the remaining balance of $390,000.00 with 108 equal Monthly Payments in the sum of $4,849.16 per month. The Modification Agreement neither characterized the Monthly Payments as equitable distribution payments nor support payments, that is, there was no expressed intent by the parties as to the nature of such payments.

Although Young's Complaint references the Monthly Payments as equitable distribution payments, Young nonetheless alleges in her Complaint that such payments were intended to be, and in fact, actually constitute support due to her and, therefore, such payments are nondischargeable pursuant to section 523(a)(5). In addition, even though state court judgments and orders awarded equitable distribution arrears to Young, such labels are not dispositive. *See Kerzner*, 250 B.R. at 491.

■ Rather, the Court finds that the preponderance of the evidence establishes that such payments were meant for housing support. First, the record reflects that no real housing allowance was provided under the Marital Agreements. Second, when the sale of the Brookside Estate did not occur, there was no longer any equity to distribute; however, the Modification Agreement nevertheless maintained the same level of distribution in that no downward modification of the amount of Monthly Payments was made to adjust for the Debtor's inability to sell the estate. Third, the Debtor acknowledged at the

September 6, 2001 Hearing that the balance of the mortgage on the Armonk House had to be paid in monthly installments and that the monthly mortgage payments more or less including the escrows for taxes and interest on the house totaled about $4,849.16 per month, which is an amount equivalent to the Monthly Payments. Furthermore, at the time of the Modification Agreement, the facts demonstrate that Young had limited opportunity to find gainful employment that would provide a steady source of income and that it does not appear that she would be able to satisfy her monthly mortgage payments on the Armonk House without the Monthly Payments under the Modification Agreement. Indeed, when the Monthly Payments were not paid by the Debtor, Young needed to liquidate certain assets to satisfy such mortgage payments. In turn, the Debtor has offered no credible evidence that his assumption of the $390,000.00 debt in the form of $4,849.16 Monthly Payments under the Modification Agreement was intended to be anything other than housing support, especially in light of the foregoing. Accordingly, based upon the preponderance of the evidence, the Court finds that the Monthly Payments are in the nature of housing support and, therefore, nondischargeable pursuant to section 523(a)(5). *See generally Bonheur*, 148 B.R. at 385 (holding that equitable distribution payments to an ex-wife, who could not have met her expenses without such assistance, was in the nature of support and, thus, was nondischargeable debt).

■ With respect to whether legal fees incurred by Young to date are in the nature of support, Article M (entitled "Default In Payment") of the Separation Agreement provided that in the event that the Debtor defaulted with respect to any payment due to Young or any obligation under the agreement, the Debtor would

have to reimburse Young for any attorney's fees, costs and disbursements for having to bring any suit or proceeding to recover any amount or to enforce any terms, covenants or conditions of the agreement. However, in the event of default in payment, Article M does not characterize the Debtor's obligation to pay legal enforcement fees to Young as either support or as arising from a property settlement. Also, the Westchester Supreme Court's and New York Family Court's respective orders and judgments do not specify that the legal fees they awarded to Young represented support. Moreover, although the Court finds that the Debtor's outstanding spousal, maintenance and child support obligations and the Monthly Payments are nondischargeable support pursuant to section 523(a)(5), this does not imply that the legal fees related to enforcing support nondischargeable obligations should "always" be classified as support. *See Silberfein*, 138 B.R. at 781 (noting that attorney's fees are not always classified as support when deriving from matrimonial actions). The Court must still review various factors, such as the nonexclusive laundry list of factors enumerated herein, in determining whether such legal fees constitute nondischargeable alimony, maintenance or support or a dischargeable obligation arising out of a property settlement. *See id.* Indeed, "[s]uch an analysis confirms the proposition that a debt for legal fees can, under certain circumstances, be a property settlement." *Id.*

Two factors the Court weighs in classifying the legal fees as alimony, maintenance or support include (1) whether there is a significant disparity in earning power between the debtor and nondebtor former spouse and (2) whether the nondebtor former spouse will not have sufficient funds to meet her monthly expenses if the legal fees debt is discharged and the nondebtor former spouse is required to pay the entire

amount of such fees. *See Hallisey v. Scalia (In re Scalia)*, 214 B.R. 697, 704 (Bankr.E.D.N.Y.1997) (weighing similar factors); *see also Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 451 (Bankr.S.D.N.Y.2000) (noting that in determining whether a state court's counsel fee award was in the nature of support where the state court's intent was unclear, a "bankruptcy court must look ... to the function of the award in light of the relative circumstances of the parties.").

In this case, at the time of the execution of the Marital Agreements, the Court notes that there was a significant disparity in current and future earning power between the parties. The Debtor was earning a six-figure salary with tremendous career potential while Young spent most of her time tending to the needs of the Children, had no source of income from work and had limited education background and growth potential. *See Scalia*, 214 B.R. at 704. In addition, credible evidence reflects that if Young were required to pay the entire amount of legal fees due from enforcing the Debtor's nondischargeable support obligations, she would not have sufficient funds to meet her monthly expenses. *See id.* Thus, based on the preponderance of the evidence, the Court finds that Young's outstanding legal fees incurred in enforcing such nondischargeable support obligations also represented support. *See Jarrell*, 251 B.R. at 452 (finding counsel fee "awards designed to meet [the pressing financial needs of the spouse or children] are more likely to constitute non-dischargeable support.").

■ Moreover, the Court finds that the legal fees incurred by Young in settling her personal property claims with respect to Robert Butler's second adversary proceeding (that is, Adv. Proc. No. 98–9167A) also constitute support and are

equally nondischargeable pursuant to section 523(a)(5) even if such fees were not incurred in litigating for support. The bankruptcy court in *Harris Beach LLP v. Anderson IV (In re Anderson IV)*, 300 B.R. 831 (Bankr.W.D.N.Y.2003), clarified that "for an award of attorney's fees to be nondischargeable as being in the nature of support, the fees must constitute support, but they need not have been incurred in litigating for support." *Id.* at 834 (citing *In re Newman*, 196 B.R. 700 (Bankr. S.D.N.Y.1996) and *Seymour Ostrow, P.C. v. Schwartz (In re Schwartz)*, 53 B.R. 407 (Bankr.S.D.N.Y.1985)). Furthermore, the court found that:

> attorney's fees, even if incurred in connection with the issues of property and equitable distribution, may still be in the nature of support if those fees: (a) redress economic disparity between monied and non-monied spouses; and (b) are necessary to allow the non-debtor spouse to continue to enjoy the standard of living enjoyed during the marriage, even though this is a concept that is somewhat inconsistent with some of the policies of the Bankruptcy Code and the frequent emphasis on reasonable and necessary expenses; or (c) allow a spouse to defend or maintain a matrimonial actions and the various issues that may be presented in any particular action.

*Id.* at 835. The Court finds that, based on the preponderance of the evidence, the legal fees incurred by Young in Robert Butler's second adversary proceeding constitute support for they balance the disparate income between Young and the Debtor and are clearly necessary to allow her to continue to enjoy the standard of living she enjoyed during their marriage.

## C. *Other Relief Sought*

Since the Monthly Payments and Young's legal fees constitute support under section 523(a)(5), there is no need to address Young's Rule 15(b) and (c) contentions or her relief sought under section 523(a)(15)(B). Further, section 523(a)(15) provides an exception to discharge of a debt "not of the kind described in [section 523(a)(5)] that is incurred by the Debtor in the course of a divorce or separation agreement, divorce decree or other order of a court of record...." 11 U.S.C. § 523(a)(15). *See generally Rushlow v. Rushlow (In re Rushlow)*, 277 B.R. 216, 219–224 (Bankr.D.Vt.2002); *Williams v. Williams (In re Williams)*, 271 B.R. 449, 453–56 (Bankr.N.D.N.Y.2001) (both cases discussing the statutory framework of section 523(a)(15) in the context of an obligation that arose in the connection with a divorce decree which neither party alleged was in the nature of support). Having found that the "debts" at issue are nondischargeable under section 523(a)(5), the Debtor's request for relief under section 523(a)(15)(B) is thereby denied as a matter of law.

## V. Conclusion

The Court finds that Young abandoned her objection to the Debtor's discharge pursuant to section 727. Further, (1) the Debtor's outstanding spousal, maintenance and child support obligations pursuant to the Marital Agreements and New York state court judgments and orders are nondischargeable under section 523(a)(5), and (2) based upon the preponderance of the evidence, the Monthly Payments and Young's outstanding legal fees incurred to date, pursuant to her state court enforcement proceedings as well as adversary proceedings in this case, both constitute support and are therefore nondischargeable pursuant to section 523(a)(5). Accordingly, the Court finds it unnecessary to address Young's Rule 15(b) and (c) contentions or her request for relief under section 523(a)(15). Having found all

amounts at issue constitute support and are nondischargeable pursuant to section 523(a)(5), the Debtor's request for relief under section 523(a)(15) is denied as a matter of law.

Therefore, for the reasons set forth herein, it is hereby:

ORDERED, that Young's counsel is directed to settle an order in accordance with this decision within 10 days of its entry.